Billy Gene TURNER, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 09–93–135 CR.

Court of Appeals of Texas, Beaumont.

Nov. 9, 1994.

John C. Connolly, Houston, for appellant.

Michael R. Little, Dist. Atty., Liberty, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Murder. The indictment contained several enhancement paragraphs raising appellant's punishment status to that of a habitual offender. Following its verdict of "guilty," and a finding of "true" with regard to the habitual offender allegations, the jury assessed appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of ninety-nine (99) years. Appellant raises ten points of error for our consideration.

■ Appellant's first two points of error aver the following:

Point of Error I: The trial court erred in failing to grant appellant's oral motion to suppress the search warrant of appellant's residence in violation of U.S. Const. Amend. IV. (sic) and Tex.Code Crim.Proc. Art. 18.04, 18.06.

Point of Error II: The trial court erred in failing to grant appellant's oral motion to suppress the search warrant of appellant's residence in violation of Tex. Const. Art. I § 9 and Tex. Code Crim.Proc. Art. 18.04, 18.06.

It is clear by the language of points of error one and two that appellant is attempting to comply with that portion of *Heitman v. State*, 815 S.W.2d 681, 690–691, n. 23 (Tex. Crim.App.1991), which provides:

Attorneys, when briefing constitutional questions, should carefully separate federal and state issues into separate grounds and provide substantive analysis or argument on each separate ground. If sufficient distinction between state and federal constitutional grounds is not provided by counsel, this Court may overrule the ground as multifarious.

■ However well intentioned, appellant nevertheless creates some confusion as his first point of error, alleging trial court error violative of federal constitutional law, also contains a reference to the *Texas* code of criminal procedure. Furthermore, with regard to addressing the two specific complaints [the warrant predating the affidavit and the fact that the affidavit was not attached to the warrant when said warrant was served on appellant], appellant makes no attempt to explain how the Fourth Amendment of the United States Constitution ties in with arts. 18.04 and 18.06 of the Texas Code of Criminal Procedure. In other words, appellant has not "carefully separate[d] federal and state issues" so that we are able to determine that he is attempting to show a clear distinction between the two. As stated by the Court of Criminal Appeals in *Arnold v. State*, 873 S.W.2d 27, 33, n. 4 (Tex.Crim.

App.1993): "The briefs should show how constitutional protection differs under the state constitution as opposed to the protection provided by similar provisions in the federal constitution." Other than acknowledging that the Fourth Amendment contains different wording from that of art. I, § 9, appellant makes no further attempt to provide substantive distinctions. Because appellant has failed to substantively indicate how his protection under the Texas Constitution exceeds or differs from that provided to him by the Federal Constitution, we will not address appellant's state constitutional argument. *Arnold v. State,* 873 S.W.2d at 33.

■ With regard to appellant's federal constitutional issues, we note that other than two United States Supreme Court cases standing for the proposition that evidence obtained in violation of the Fourth Amendment is to be excluded at trial, and that said exclusionary rule is applicable to the states through the Fourteenth Amendment, appellant provides no federal authority for relief from his alleged deprivation of Fourth Amendment rights. As such, appellant has inadequately briefed point of error one as to any federal constitutional violation and we decline to address said issue. Tex.R.App.P. 74(f). Point of error one is overruled.

■ The only issue remaining under either point of error one or two is the claim of Texas statutory violation as to Tex.Code Crim.Proc.Ann. arts. 18.04 & 18.06 (Vernon 1977 & Vernon Supp.1994). On the issue of the warrant predating the affidavit, the record reflects that the date the warrant was purportedly issued is typed in as the "17th" day of September, 1989. The affidavit supporting the issuance of said warrant was sworn to before Montgomery County District Court Judge James Keeshan on the "18th" day of September, 1989. Testimony was elicited from Captain Robert Dunn of the Liberty County Sheriff's Office. Captain Dunn drew up the affidavit and the warrant and presented each to Judge Keeshan who authorized issuance of said warrant. During a voir dire examination of Captain Dunn by defense counsel, the following testimony was recorded:

Q. (Defense Counsel) Let me tell you why I am asking you these questions, sir. You have got an affidavit there dated the 18th day of September, 1989, correct?

A. (Captain Dunn) Are you talking about on the front page?

Q. Whatever date is on the affidavit, sir.

A. Okay.

Q. Then you have got a search warrant attached that's dated the 17th day of September, 1989.

A. Yes, sir, I am aware of that, too.

Q. Would that mean the search warrant was issued first?

A. No, sir.

Q. Well, what would it mean?

A. When we started drafting this search warrant affidavit, search warrant, and the return part, it was on the 17th day of September, 1989.

Q. All right.

A. It was typed in as such.

Q. All right.

A. The 18th—where you see the 18th was left blank. When after midnight we did not go back and change this 17 to 18. The blank part on the affidavit, when it was—I swore to it in front of Judge Keeshan and he accepted it, he filled in the blank 18th.

Q. Well, did he fill in—Who filled in the blank on the search warrant?

A. It is not a blank, sir, it is typed in.

Q. Who filled that in?

A. It was filled in as we were drafting this paper work at the Sheriff's Department.

Q. Are you telling us that Judge Keeshan signed an affidavit dated the 18th and then signed the search warrant the 17th?

A. Well, I am saying this complete packet was taken to him that morning of the 18th, was presented to him and he affixed his signature to them.

Based upon the record before us, it is clear that the process of drafting the warrant began late September 17 and carried into the next day, September 18. Apparently through inadvertence no one caught the typed-in date of "17th" on the warrant. Nevertheless, Captain Dunn's testimony is suffi-

cient to assure us that both affidavit and warrant were presented to Judge Keeshan at the same time on September 18. The Court of Criminal Appeals addressed the issue of typographical errors in search and arrest warrants in *Daena April Green v. State,* 799 S.W.2d 756 (Tex.Crim.App.1990). Observing that "[t]his kind of error will not vitiate either an arrest or search warrant," the *Green* Court set out the following explanation:

> The two objectives of the law concerning search warrants are to ensure there is adequate probable cause to search and to prevent a mistaken execution of the warrant against an innocent third party. *Bridges v. State,* 574 S.W.2d 560 (Tex.Cr. App.1978). These objectives are not furthered by rigid application of the rules concerning warrants; as this Court has previously stated, "(We) are convinced that the rights of society and of the innocent third party can best be protected by evaluating each search warrant individually." *Id.* at 562. Just as we will evaluate the encompassing issue of probable cause by measuring the factual sufficiency of an affidavit and warrant by the "Totality of Circumstances" test enunciated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), so do we review technical discrepancies with a judicious eye for the procedural aspects surrounding issuance and execution of the warrant. To do otherwise would defeat the purpose behind the warrant requirement, and provide protection for those to whom the issue on appeal is not one based upon the substantive issue of probable cause but of technical default by the State.

*Green,* 799 S.W.2d at 757–758. In the instant case, we agree that the evidence sufficiently explains the reason for the warrant predating the affidavit as being that of inadvertence. Such a technical error will not invalidate the warrant under either art. 18.04(2) or (3) as appellant argues.

■ Appellant next maintains that because the warrant and the affidavit were not physically attached, the warrant failed to meet the requirements of art. 18.06(b), which provides in pertinent part:

On searching the place ordered to be searched, the officer executing the warrant shall present a copy of the warrant to the owner of the place, if he is present.

■ At the outset, we take note that the record before us reflects the following: that appellant was served a copy of the warrant prior to the search, and was presented with a written inventory of the items seized following the completion of the search; that the warrant itself did not contain the address of the premises to be searched; that it did not name the person alleged to be in charge of the premises; and that it did not describe the items or property to be searched for and seized. Appellant is correct in his contention that a warrant that does not contain the basic information required by art. 18.04 can nevertheless be valid so long as the warrant incorporates by reference the affidavit *and* said affidavit does contain all of the information required by art. 18.04. Additionally, appellant insists, Texas law mandates that in such situations validity of the warrant requires that the affidavit also must be physically attached to the warrant. Appellant's contention that the affidavit in question was not "expressly made a part of the warrant" is incorrect as the warrant states on its face, in pertinent part: "Whereas, the Affiant whose signature is affixed to the *Affidavit attached hereto and expressly made a part hereof,....*" (emphasis added).

We see appellant's complaints as analogous to those made in the three following cases, *Othar Glen Green v. State,* 880 S.W.2d 198 (Tex.App.—Texarkana 1994, no pet.); *Gonzales v. State,* 743 S.W.2d 718 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd); and *Robles v. State,* 711 S.W.2d 752 (Tex.App.—San Antonio 1986, pet. ref'd). In all three cases, the authorities failed to comply with the specific requirement of art. 18.06(b). In *Othar Glen Green,* the defendant was not provided a copy of the search warrant prior to the search taking place, although the warrant had been issued and was en route to the search scene. In *Gonzales,* the warrant failed to contain the required art. 18.04 language but did expressly incorporate the "attached affidavit." In *Gonzales,* as in the instant case, the affidavit was not attached to

the search warrant served upon the defendant prior to the search. In *Robles,* the search warrant was read to those present at the search scene but no written copy was given to anyone and, although an inventory of the items seized was prepared and a return made to the issuing magistrate, no copy of the inventory was given to anyone at the premises searched.

Relying on the two objectives of the law concerning search warrants discussed *supra* in *Daena April Green v. State,* 799 S.W.2d at 757–758, the *Othar Glen Green* court found that those objectives were not furthered by a "rigid application of the rules concerning warrants, thus we review technical discrepancies with a judicious eye for the procedural aspects surrounding issuance and execution of the warrant." *Othar Glen Green v. State,* 880 S.W.2d at 201.

■ The Court of Appeals in *Othar Glen Green* as well as the *Gonzales* court relied on *Robles* in finding no error stemming from the technical violations of art. 18.06(b). All three cases held that such ministerial violations of the search warrant statute do not vitiate an otherwise valid search absent a showing of prejudice or harm to the defendant. *Othar Glen Green,* 880 S.W.2d at 201; *Gonzales,* 743 S.W.2d at 720; *Robles,* 711 S.W.2d at 753. With regard to the instant case, art. 18.06 does not require that the affidavit be served upon the owner of the premises to be searched, only the warrant and the written inventory. Logically, under the rationale discussed above concerning ministerial violations, if there is no violation of the search warrant statute, there can be no ministerial violation by the authorities in not providing appellant with a copy of the affidavit in question. At any rate, based upon the testimony of Captain Dunn, we find that the "procedural aspects surrounding the issuance and execution of the warrant" ensured that adequate probable cause existed for the search and that sufficient prophylactic measures were taken to protect the privacy rights of innocent third parties. We find no violation of either art. 18.04 or art. 18.06. Point of error two is overruled.

■ Points of error three and four complain as follows:

Point of Error III: The trial court erred in failing to grant a mistrial after the State introduced evidence that appellant was on parole at the time of the offense in violation of Tex.R.Crim.Evid. Rule 404(b) and U.S. Const. Amd. V.

Point of Error IV: The trial court erred in failing to grant a mistrial after the State introduced evidence that appellant was on parole at the time of the offense in violation of Tex.R.Crim.Evid. Rule 404(b) and Tex. Const. Art. I § 13.

In briefing points of error three and four, appellant again fails to carefully separate and sufficiently distinguish between state and federal constitutional issues. Specifically, he again fails to substantively indicate how his Texas Constitution protections exceed or differ from any provided to him under the United States Constitution. Relying on the language in *Arnold v. State,* 873 S.W.2d at 33, we decline to address any state constitutional issue.

■ Appellant has also again inadequately briefed his federal constitutional issue as the entirety of his "argument and authorities" consists of the following:

U.S. Const. amd. V requires that "No person shall ... be deprived of life, liberty or property, without due process of law. This protection is applicable to State prosecutions. (sic) *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489 [12 L.Ed.2d 653] (1964).

By no stretch of the imagination is this a "discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue[,]" when the point at issue complains of the admission of an extraneous offense during the guilt/innocence phase of the trial. TEX.R.APP.P. 74(f). Again, we decline to address any federal constitutional claim because of appellant's briefing deficiency. Left for consideration is whether appellant is provided any relief under TEX.R.CRIM. EVID. 404(b).

Appellant directs our attention to the following portion of the record in which the State is eliciting testimony from Captain Dunn:

Q. (the State) Was there anything unusual about the timing of the truck being found?

A. (Dunn) Yes, sir.

Q. What was that?

A. It was the day—or the first or second day after a hearing—this was some state officials, in relation to Billy Gene Turner, Jr.

Q. Was there some discussion at that point regarding the level of charge that was going to be filed?

A. I suggested capital murder because the truck was missing.

Q. And was the defendant or any person associated with the defendant present at that time?

A. Yes, sir.

Q. Who was that?

A. The attorney was present at that hearing.

Q. Was the defendant present?

A. Yes.

(Defense Counsel): May we approach the bench, Your Honor?

THE FOLLOWING OCCURRED OUTSIDE THE PRESENCE OF THE JURY:

(Defense Counsel): If it please the Court, he is treading all over the back that this was a parole revocation hearing.

(The State): He said there was a hearing.

(Defense Counsel): This is not admissible in this proceeding for any purpose.

The Court: You are correct.

\* \* \* \* \* \*

THE FOLLOWING OCCURRED IN THE PRESENCE OF THE JURY:

Q. (the State) Officer Dunn, you indicated, I believe, when the jury left, you were talking about a hearing that was held at which the defendant and his attorney were present, is that correct?

A. That is correct.

Q. During the course of that hearing was there any mention of the possibility of capital murder charges being filed in this case as opposed to murder charges?

A. Capital murder was mentioned, yes, sir.

Q. In what relation and what regard was it mentioned?

(Defense Counsel): Your Honor, I am going to object. This is hearsay.

The Court: Was the defendant there?

(The State): He already testified the defendant and his attorney were there.

The Court: Overruled.

A. (Dunn) It was in reference to the missing vehicle of the deceased.

Q. How would the vehicle have any part in determining whether capital murder charges could be filed as opposed to murder charges?

(Defense Counsel): Your Honor, again I am going to object. He is asking for a legal opinion. I don't believe he's qualified.

The Court: Overruled.

A. (Dunn) Capital murder, if there is robbery (sic) kidnapping, certain items—certain offenses, if murder is committed during any commission of these offenses then it enhances it to a capital murder charge.

Q. And who mentioned the possibility of filing capital murder charges?

A. I did.

Q. And what did you say in the presence of the defendant and his attorney?

A. I said as long as his vehicle, we don't have no idea where it's at, as long as it is missing that is still a possibility.

Q. After the hearing, do you recall how long after that the victim's vehicle was found?

A. The next day or the day after.

It appears from the portion of the record referenced by appellant that his one quasi-objection to the State "treading all over the back" of the parole revocation hearing found sympathy with the trial court as the judge admonished both sides to refrain from getting into any matters dealing with parole. Thereafter, appellant's only objections were grounded in "hearsay" and that the State was asking for a legal opinion from an unqualified witness. No objection was made that Captain Dunn's testimony was inadmis-

sible based upon Rule 404(b). As appellant's objections at trial differ from his complaint on appeal, he has preserved nothing for review. *Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991). Points of error three and four are overruled.

▇▇▇ Points of error five and six contend the following:

Point of Error V: The trial court erred in instructing the jury on the law of parties where there was no evidence to support that charge in violation of the due process protections of U.S. Const. Amd. V.

Point of Error VI: The trial court erred in instructing the jury on the law of parties where there was no evidence to support that charge in violation of the due course of law protections of Tex. Const. Art. I § 13.

Again, appellant's state constitutional point is overruled for violating the dictates of *Arnold v. State*, 873 S.W.2d at 33, n. 4, as discussed above. Appellant's federal constitutional point is again overruled as having been inadequately briefed under Rule 74(f) as appellant provides no cases in which Fifth Amendment protection with regard to jury instructions on "parties," or "aiding and abetting" in the federal context,[1] is discussed. Points of error five and six are overruled.

▇▇▇ Appellant's next two points of error provide:

Point of Error VII: The trial court erred in precluding the testimony of Allen Farris in violation of appellant's right to due process of law. U.S. Const. Amd. V.

Point of Error VIII: The trial court erred in precluding the testimony of Allen Farris in violation of appellant's right to due course of law. Tex. Const. Art. I § 13.

Appellant directs our attention to the following portion of the statement of facts:

THE COURT: You are excused, sir. Next witness.

(Defense Counsel): Allen Farris.

1. *See* 18 U.S.C.A. § 2 (West 1969).

THE COURT: This witness has been in the courtroom.

(Defense Counsel): I don't think he was during the testimony.

(The State): Yes, he was.

(Defense Counsel): I am sorry, Your Honor.

Thereafter appellant called no other witnesses and rested his case in the punishment phase.

From the record before us it is clear that appellant made no objection to the trial court's contention that appellant's witness, Allen Farris, had violated the rule. *See* Tex. R.Crim.Evid. 613. Because appellant did not object to the attempted exclusion of his witness, he has failed to preserve points of error seven and eight for appellate review. Tex. R.App.P. 52(a). Points of error seven and eight are overruled.

▇▇▇ Appellant's final two points of error complain that trial counsel failed to render effective assistance in violation of both federal and state constitutions. Although appellant has once again failed to clearly separate his arguments and authorities under each constitutional provision listed, we will address the issue of ineffective assistance of counsel as Texas' constitutional and statutory provisions regarding ineffective assistance cases are not more protective of a defendant's rights than the standard set forth under the United States Constitution as interpreted in *Strickland v. Washington*[2]. *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986).

▇▇▇ *Strickland* is the seminal case with regard to ineffective assistance claims. To support such a claim, an appellant must prove: 1) that counsel's performance was deficient, and 2) that this deficient performance prejudiced his defense. *Hernandez*, 726 S.W.2d at 57. Consideration of the "totality of the representation," rather than isolated acts or omissions of trial counsel, determines whether sufficient proof of these two prongs has been made. *Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex.Crim.App.), *cert.*

2. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

denied, —— U.S. ——, 114 S.Ct. 122, 126 L.Ed.2d 87 (1993). Moreover, if an appellant fails to prove the prejudice component, the reviewing court need not address the question of counsel's performance. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *Gamboa v. State,* 822 S.W.2d 328, 330 (Tex.App.—Beaumont 1992, pet. ref'd). The method for proving the prejudice component is spelled out as follows:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

▮▮▮ In the instant case, appellate counsel lists some seven allegations of "deficient performance" and then proceeds to show how each "omission" by trial counsel was deficient in its own way. However, appellate counsel does not begin to provide any evidentiary support for the showing that the result of the proceeding would have been different absent trial counsel's "omissions." The transcript before us reflects that appellant filed a motion for new trial. Said motion did not contain any mention of ineffective assistance of trial counsel. Furthermore, the full record before us reflects that no hearing was apparently ever requested by appellant on said motion. The motion was presumably overruled by operation of law. Appellate counsel could have aided this Court by insisting on a hearing on said motion thereby providing an evidentiary record to support the otherwise conclusory claims of prejudice to appellant stemming from the alleged deficiencies. *See* TEX.R.APP.P. 30 & 31.

Having examined the seven deficiency allegations, we find that the one dealing with the failure to object to the DNA expert testimony is closest to being "per se" prejudicial if correct. Presumably, if trial counsel had managed to suppress the testimony that there was a 99.93% chance that it was the victim's blood covering appellant's boots, it could be said that confidence in the outcome of the trial had been sufficiently undermined.

Appellant contends that trial counsel failed to suppress the "novel scientific evidence testimony" in that trial counsel failed to insist that the State lay the proper predicate for admission of said testimony under the dictates of *Kelly v. State,* 824 S.W.2d 568 (Tex. Crim.App.1992). Appellant reproduces the specific predicate used in *Kelly* prior to the introduction of the DNA test results in that case. Appellant contends that none of the specific *Kelly* predicates were proven by the State in the instant case. It is clear to us, however, that appellant misreads the Court of Criminal Appeals' holding in *Kelly.* The Court in *Kelly* merely requires that the proffered expert testimony is reliable and relevant under the Texas Rules of Criminal Evidence. *Id.* at 572. The Court lists three criteria for determining whether novel scientific evidence is reliable: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question. *Id.* at 573.

In the instant case trial counsel expressly requested, under the provisions of TEX. R.CRIM.EVID. 705(b), to conduct a voir dire examination of the State's DNA expert prior to her testifying to the results of any DNA testing she engaged in. The State's expert was vigorously questioned by trial counsel during said voir dire examination and during cross-examination in an attempt to raise questions as to the reliability of said expert's DNA testing procedures. An examination of trial counsel's questions to the State's DNA expert reveals some very incisive, pointed, and cogent queries.

▮▮▮ It is clear to us that the particular description of the DNA testing process used by the expert in the *Kelly* case is but *one* way to satisfy the holding in *Kelly* requiring proof of reliability and relevancy. It is within the trial court's discretion to determine whether or not the proponent of the novel scientific evidence has satisfied his or her burden under *Kelly.* In the instant case, we find no deficiency on the part of trial counsel in the trial strategy and tactics employed in confronting the State's DNA expert. We

therefore overrule points of error nine and ten. Having overruled all points of error, the judgment and the sentence of the trial court are affirmed.

AFFIRMED.