In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00001-CV


______________________________




BILLY WAYNE HORTON, Appellant



V.



RODNEY COOPER, ET AL., Appellees




 


On Appeal from the 102nd Judicial District Court


Bowie County, Texas


Trial Court No. 00C1661-102




 




Before Grant, Ross, and Cornelius,* JJ.


Opinion by Justice Ross


*William J. Cornelius, C.J., Retired, Sitting by Assignment



O P I N I O N



 Billy Horton appeals from the dismissal of his suit against the Texas Department of
Criminal Justice-Institutional Division (TDCJ), Rodney Cooper, John Doe, and Gary
Johnson. Horton, an inmate, alleged violations of the Texas Deceptive Trade Practices
Act (DTPA) and breach of contract against the TDCJ, Cooper, Doe, and Johnson. Horton
attached to his petition an affidavit documenting his previous lawsuits in Texas or federal
courts, an affidavit documenting his compliance with the TDCJ grievance procedures, and
a motion to waive the filing fee. After reviewing the master's report and Horton's objections
to the report, the trial court adopted the master's report as filed and dismissed Horton's suit
before service of process. The court's stated reasons for dismissal were that the lawsuit
was frivolous and without likelihood of success. See Tex. Civ. Prac. & Rem. Code Ann.
§ 14.003 (Vernon Supp. 2002). 

 Horton only appeals the dismissal as it applies to Cooper, Doe, and Johnson. With
regard to the dismissal against the TDCJ, Horton requests that this Court dismiss without
prejudice because he contends he still has claims against the TDCJ under the Texas Tort
Claims Act. However, the trial court did not dismiss Horton's lawsuit with prejudice, so we
need not address that issue. See P.R.I.D.E. v. Tex. Workers' Comp. Comm'n, 950 S.W.2d
175, 177 (Tex. App.-Austin 1997, no writ); Melton v. Ryander, 727 S.W.2d 299, 303 (Tex.
App.-Dallas 1987, writ ref'd n.r.e.); Collins v. Flatte, 614 S.W.2d 580, 582 (Tex. Civ.
App.-Texarkana 1981, no writ). 

 We review a dismissal under Chapter 14 of the Texas Civil Practice and Remedies
Code using an abuse of discretion standard. Smith v. Tex. Dep't of Criminal Justice-Institutional Div., 33 S.W.3d 338, 339 (Tex. App.-Texarkana 2000, pet. denied); Hickson
v. Moya, 926 S.W.2d 397, 398 (Tex. App.-Waco 1996, no writ). The trial court abuses its
discretion if it acts without reference to any guiding rules or principles.

 Section 14.003 allows a trial court to dismiss a suit filed by an indigent inmate, either
before or after service of process, if the court finds the claim is frivolous or malicious. Tex.
Civ. Prac. & Rem. Code Ann. § 14.003(a)(2). In determining whether the claim is frivolous
or malicious, the court may consider whether (1) the claim's realistic chance of ultimate
success is slight; (2) the claim has no arguable basis in law or fact; (3) it is clear the party
cannot prove facts in support of the claim; or (4) the claim is substantially similar to a
previous claim filed by the inmate because the claim arises from the same operative facts.
Tex. Civ. Prac. & Rem. Code Ann. § 14.003(b). 

 The Texas Supreme Court has expressed doubt about whether a trial court can
properly dismiss a suit only because the claim's realistic chance of ultimate success is
slight or because it is clear the party cannot prove facts in support of the claim. Johnson
v. Lynaugh, 796 S.W.2d 705, 706-07 (Tex. 1990). Practically speaking, therefore, the trial
court is limited to determining whether the claim has an arguable basis in law or fact. 
Bohannan v. Tex. Bd. of Criminal Justice, 942 S.W.2d 113, 115 (Tex. App.-Austin 1997,
writ denied). When the trial court dismisses a claim without conducting a fact hearing, we
are limited to reviewing whether the claim had an arguable basis in law. Sawyer v. Tex.
Dep't of Criminal Justice, 983 S.W.2d 310, 311 (Tex. App.-Houston [1st Dist.] 1998, pet.
denied); Leon Springs Gas Co. v. Rest. Equip. Leasing Co., 961 S.W.2d 574, 579 (Tex.
App.-San Antonio 1997, no pet.); Bohannan, 942 S.W.2d at 115; In re Wilson, 932 S.W.2d
263, 265 (Tex. App.-El Paso 1996, no writ). 

 Because the trial judge did not hold a hearing, his basis for determining that
Horton's causes of action were frivolous or malicious could not have been because he
found they had no arguable basis in fact. Therefore, the issue is whether the trial court
properly determined there was no arguable basis in law for the suit. Bohannan, 942
S.W.2d at 115. We are to review and evaluate pleadings filed pro se by standards less
stringent than those applied to formal pleadings drafted by lawyers. Thomas v. Collins,
860 S.W.2d 500, 503 (Tex. App.-Houston [1st Dist.] 1993, writ denied). 

 To determine whether the trial court properly decided there was no arguable basis
in law for Horton's suit, we examine the types of relief and causes of action Horton pled in
his petition to determine whether, as a matter of law, the petition stated a cause of action
that would authorize relief. Lentworth v. Trahan, 981 S.W.2d 720, 722 (Tex.
App.-Houston [1st Dist.] 1998, no pet.). 

 Horton filed suit alleging violations of the DTPA and breach of contract concerning
a word processor he purchased from the prison unit commissary for inmates. When
Horton purchased the word processor in 1994, the rules allowed him to have repairs made
to the word processor by sending it to the commissary headquarters. In 1998, Horton was
transferred to the Telford Unit and was allowed to keep his word processor. In January
2000, the word processor broke. When Horton sought to have it fixed, he was told the
rules had changed: repairs through the TDCJ were no longer authorized. Horton was told
he would have to mail the word processor to relatives or it would be destroyed.

 A special master filed a report stating that governmental agencies are not subject
to the provisions of the DTPA and recommending that all allegations relating to the DTPA
be dismissed. He also recommended dismissing the allegation of breach of contract
because rules and regulations are not contracts, they are unilateral; there is no offer and
acceptance, and no meeting of the minds. The trial court adopted the master's
recommendations and findings, and dismissed the lawsuit as frivolous and without
likelihood of success. 

 Horton appeals the dismissal, contending the trial court erred in dismissing his suit
against Cooper, the warden, Doe, the regional director, and Johnson, the director of the
TDCJ. Horton contends the trial court erred in dismissing the case against Cooper, Doe,
and Johnson because he sued them individually, and the master's report only states that
the TDCJ is immune from suit under the DTPA.

 To have no arguable basis in law, a claim must be based on "an indisputably
meritless legal theory," Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104
L.Ed.2d 338 (1989), or the facts alleged must rise to the level of the irrational or wholly
incredible, Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). 
"An in forma pauperis complaint may not be dismissed, however, simply because the court
finds the plaintiff's allegations unlikely." Denton, 504 U.S. at 33. Therefore, for the claim
to have no basis in law, the facts as pleaded must not comprise a cause of action. 

 The elements of a DTPA claim are (1) the plaintiff is a consumer, a person who
seeks or acquires goods or services by purchase or lease, (2) the defendant engaged in
false, misleading, or deceptive acts, and (3) the act constituted a producing cause of the
consumer's damages. Tex. Bus. & Com. Code Ann. §§ 17.45(4), 17.50(a) (Vernon Supp.
2002); Larsen v. Carlene Langford & Assocs., 41 S.W.3d 245, 250 (Tex. App.-Waco 2001,
pet. denied). While there is no requirement of privity, the defendant's wrongful conduct
must be committed in connection with the consumer's transaction, must constitute a
producing cause of economic damages or damages for mental anguish, and must fall
under Section 17.50 of the DTPA. See Tex. Bus. & Com. Code Ann. § 17.50 (Vernon
Supp. 2002). Where a plaintiff relies on Section 17.50(a)(1), the plaintiff must also prove
the consumer relied on the defendant's wrongful conduct to the consumer's detriment. Id. 
Horton's claim of misrepresentation must allege Cooper, Doe, and Johnson represented
that an agreement confers or involves rights, remedies, or obligations which it does not
have or involve, or which are prohibited by law. Tex. Bus. & Com. Code Ann.
§ 17.46(b)(12) (Vernon Supp. 2002). General or indefinite statements may support
recovery under the DTPA. See Humble Nat'l Bank v. DCV, Inc., 933 S.W.2d 224, 230
(Tex. App.-Houston [14th Dist.] 1996, writ denied). 

 Horton's petition wholly fails to assert any allegations against Doe or Johnson. He
does not state what actions or misrepresentations they made. Although Doe and Johnson
are listed in the style of the case and as parties, there is no further mention of them beyond
this point. There is no indication as to what their conduct or involvement in Horton's
attempt to repair his word processor may have been. Because Horton failed to allege the
necessary elements to state a claim against Doe and Johnson under the DTPA, the trial
court did not err in dismissing his claim as to Doe and Johnson, regardless of the capacity
in which they were sued.

 Horton's petition does allege actions by Cooper. He specifically states, 

 Warden Rodney Cooper, an agent of the TDCJ-ID had denied Plaintiff's Step
1 Grievance where Plaintiff requested that he be allowed to have his word
processor repaired. This was denied. Plaintiff also had submitted several
personal requests to Warden Cooper to have the word processor repaired,
but received no response.

 

In his petition, Horton also said he "has seen this posted rule which states that word
processors would no longer be allowed to be fixed." Horton does not contend Cooper was
involved in any way in the transaction whereby he acquired the word processor. He
purchased the word processor in 1994 while at a different facility. Horton failed to allege
Cooper made any "[f]alse, misleading, or deceptive acts or practices in the conduct of any
trade or commerce . . . ." Tex. Bus. & Com. Code Ann. § 17.46(a) (Vernon Supp. 2002). 


 There is no indication in Horton's pleadings that Cooper engaged in false,
misleading, or deceptive acts. See Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d
472, 478 (Tex. 1995). Those pleadings reveal that Horton was aware of the rule change
prohibiting the repair of word processors. Because Horton failed to allege the necessary
elements to state a claim against Cooper under the DTPA, the trial court did not err in
dismissing Horton's claim against him.

 Horton's second point of error contends the trial court erred in dismissing his claim
of breach of contract against Cooper, Doe, and Johnson. The elements of a breach of
contract claim are: 1) existence of a valid contract; 2) performance or tendered
performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages
to the plaintiff resulting from the breach. Wright v. Christian & Smith, 950 S.W.2d 411, 412
(Tex. App.-Houston [1st Dist.] 1997, no writ). 

 Horton failed to allege the existence of a contract between him and Cooper, Doe,
or Johnson. Without the existence of a contract, a breach of contract action cannot be
maintained. Because Horton failed to allege the necessary elements to state a claim for
breach of contract, the trial court did not err in dismissing this claim.


 We affirm the judgment of the trial court. 



 Donald R. Ross

 Justice


Date Submitted: March 26, 2002

Date Decided: June 12, 2002


Do Not Publish




ine-height: 0.416667in">            We agree with the State that no variance exists. While the statute distinguishes between
controlled substances and controlled substance analogues, the plain language of the statute is
sufficiently broad to include, within the definition of a controlled substance analogue, the relevant
controlled substance. Obviously, a substance which is actually methamphetamine would have a
chemical structure "substantially similar" to methamphetamine. Indeed, the structures would be
identical. We do not believe the phrase "substantially similar" excludes a controlled substance from
fitting within the definition of its analogue.
            Even if a variance exists, the variance would be immaterial. "[A] variance that is not
prejudicial to a defendant's 'substantial rights' is immaterial." Gollihar, 46 S.W.3d at 247–48; see
Stevens v. State, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995); see also Rojas v. State, 986 S.W.2d
241, 246 (Tex. Crim. App. 1998). And only a material variance will render the evidence insufficient. 
Fuller, 73 S.W.3d at 253.
            To determine whether a defendant's "substantial rights" have been prejudiced, we must
consider two questions: whether the indictment, as written, informed the defendant of the charge
sufficiently to allow him or her to prepare an adequate defense at trial, and whether prosecution
under the indictment as drafted would subject the defendant to the risk of being prosecuted later for
the same crime. Gollihar, 46 S.W.3d at 248. Baker's contention in this connection is simply that
there is a variance; he makes no claim or showing of how the alleged variance prejudiced him. 
Because Baker has failed to show his substantial rights were prejudiced,


 the variance, if any, is
immaterial.
            Viewed in a light most favorable to the prosecution, a rational juror could have found all the
essential elements of the offense beyond a reasonable doubt. In a statement given to the
investigating officers, Teresa Baker, Baker's wife, alleged that her husband had been "cooking"
methamphetamine once or twice a week for approximately one year. In addition, Baker admitted,
in his statement to the police, that he was in the process of "cooking" methamphetamine when
arrested by the police. Seven different items seized from Baker's home contained methamphetamine
in an amount greater than four grams but less than 200 grams. The evidence is legally sufficient. 
We overrule Baker's first point of error.
(2)  The Search Warrant Adequately Incorporated the Accompanying Affidavit
            At the time the search warrant was executed, the affidavit was not attached to the search
warrant; and officers served on Baker only the warrant and the inventory of seized items. Baker
argues the search warrant is insufficient because it fails to specifically describe the person, place, or
thing to be searched. Although the supporting affidavit contains specific descriptions of the person,
place, and items sought, Baker contends the affidavit was not properly incorporated into the warrant. 
According to Baker, the search therefore violated the United States and Texas Constitutions; see U.S.
Const. amend. IV; Tex. Const. art. I, § 9; and the trial court erred in overruling his motion to
suppress the fruit of the search. We disagree.
            A trial court's decision to grant or deny a motion to suppress is reviewed under an abuse of
discretion standard. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). We afford
almost total deference to a trial court's determination of the historical facts supported by the record,
especially when the trial court's findings are based on an evaluation of credibility and demeanor.


 
Id. At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility
of the witnesses. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo
those questions not turning on credibility and demeanor. Hernandez v. State, 957 S.W.2d 851 (Tex.
Crim. App. 1998).
            Based on various information sources not at issue here, Lisa Ahrens, a narcotics investigator
for the Ark-La-Tex Narcotics Task Force, presented to a judge a detailed affidavit supporting her
request for a warrant to search Baker's residence, accompanied by a proposed search warrant. After
Ahrens swore that all the facts in the affidavit were true and signed the affidavit, the trial judge
executed the verification form on the affidavit and signed the warrant. At that time, the affidavit was
attached to the search warrant. In executing the search warrant, the police discovered numerous
items suspected of containing methamphetamine, as well as chemicals and equipment commonly
used to manufacture methamphetamine. 
            Baker cites Groh v. Ramirez, 540 U.S. 551 (2004), as support for the proposition the search
warrant is inadequate. In Groh, the search warrant did not describe the property to be seized or
incorporate the detailed affidavit by reference. However, Groh noted "most Courts of Appeals have
held that a court may construe a warrant with reference to a supporting application or affidavit if the
warrant uses appropriate words of incorporation and if the supporting document accompanies the
warrant." Id. at 557–58. It is a well-established rule in Texas that, when a search warrant
incorporates an attached affidavit, the documents should be considered together. Long v. State, 132
S.W.3d 443, 447 n.11 (Tex. Crim. App. 2004). Groh is clearly distinguishable from the facts of this
case because the warrant in this case explicitly incorporates the affidavit by reference.
            Baker argues the language in the search warrant is so vague that no reasonable person would
have notice of what affidavit is being incorporated. We disagree. The warrant refers to an "attached
affidavit" and states the "said Affidavit is hereby made part hereof for all purposes as if fully copied
herein." Ahrens testified the affidavit was attached to the warrant at the time it was presented to the
judge,


 and both the warrant and the affidavit bear the judge's signature and the same date.


 While
the language of the warrant may not be ideal in referring to the affidavit, it is sufficient to incorporate
the affidavit. The description contained in an affidavit controls over the description contained in the
warrant. Ashcraft, 934 S.W.2d at 735. Because the affidavit is incorporated, the warrant is adequate.
            We note the evidence at trial showed the affidavit was no longer attached to the search
warrant when the search warrant was served on Baker.


 Even if the failure to provide the affidavit
to Baker violates the Texas Code of Criminal Procedure, ministerial violations of the search warrant
statutes do not vitiate the search warrant in the absence of a showing of prejudice. Id. (failure to
physically attach affidavit does not invalidate search absent prejudice or harm); Turner v. State, 886
S.W.2d 859, 865 (Tex. App.—Beaumont 1994, pet. ref'd) (absent evidence of harm, failure to serve
probable cause affidavit does not require suppression of evidence); see Roberts v. State, 963 S.W.2d
894, 903 (Tex. App.—Texarkana 1998, no pet.). Baker has failed to show he was prejudiced
because the affidavit was not attached to the warrant when served.
            Because the warrant adequately incorporates the affidavit, and because Baker has not shown
he was prejudiced by the failure to serve a copy of the affidavit on him, we overrule Baker's second
point of error.
            We affirm the trial court's judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          August 1, 2006
Date Decided:             August 23, 2006

Do Not Publish