In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00196-CR
______________________________


RODGADROS TARREZ RIDER, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 29168-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Rodgadros Tarrez Rider (Rider) appeals his conviction by jury trial of felony possession of
a controlled substance, namely cocaine, with intent to deliver. Rider pled true to the enhancements
and was sentenced to ninety-nine years' imprisonment in the Institutional Division of the Texas
Department of Criminal Justice.
            Rider raises six issues on appeal. He contends that 1) legally insufficient evidence exists to
support the verdict, 2) factually insufficient evidence exists to support the verdict, 3) the trial court
erred in denying his motion to suppress because the warrant failed to set forth probable cause,
4) legally insufficient evidence exists to support the finding that the search warrant was issued before
the search, 5) factually insufficient evidence exists to support the finding that the search warrant was
issued before the search, and 6) the trial court erred in denying his Batson challenge to the jury panel.
            Acting on a tip from a confidential informant, the County Organized Drug Enforcement Unit
conducted a "no knock" entry search of an apartment in Longview, Texas, on June 18, 2001. 
Dorothy Rider, Rider's mother, leased and resided in the apartment. Rodgadros Rider and his six-year old son were in the living room when the officers entered through the front door, and they were
the sole occupants of the apartment at the time of the search. A search of the living room revealed
crack cocaine inside a small black box resting on top of a speaker or cabinet. A search of one of the
bedrooms disclosed six two-ounce jars containing liquid codeine cough syrup, prescription drugs
with the labels removed, and a white aspirin bottle containing white residue. In the bedroom closet,
officers found a black leather jacket with crack cocaine in the pocket. 
Legal and Factual Sufficiency
            In his first two points of error, Rider argues there was legally and factually insufficient
evidence to support the jury's finding that he possessed a controlled substance with intent to deliver. 
Specifically, Rider argues the State failed to prove he was in possession of the cocaine. 
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
            In contrast to legal sufficiency, a factual sufficiency review dictates that the evidence be
viewed in a neutral light, favoring neither party. Johnson, 23 S.W.3d at 7. In determining the factual
sufficiency of the evidence to establish the elements of the offense, we view all the evidence in a
neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong, or so weak as to be clearly wrong or manifestly unjust. Id. 
However, "[t]he court's evaluation should not substantially intrude upon the jury's role as the sole
judge of the weight and credibility of witness testimony." Jones v. State, 944 S.W.2d 642, 648 (Tex.
Crim. App. 1996).
            Rider contends there was insufficient evidence he possessed the cocaine. Possession means
"actual care, custody, control, or management." Tex. Health & Safety Code Ann. § 481.002(38)
(Vernon 2003). No controlled substances were found on Rider's person. When the contraband is
not found on the accused's person or it is not in the accused's exclusive possession, additional facts
must affirmatively link the accused to the contraband. Jones v. State, 963 S.W.2d 826, 830 (Tex.
App.‒Texarkana 1998, pet. ref'd). To show possession, the State can use direct or circumstantial
evidence. Id. This Court has held that factors which should be considered when evaluating whether
an affirmative link exists are:
1) the defendant's presence when the search was executed; 2) whether the contraband
was in plain view; 3) the defendant's proximity to and the accessibility of the
contraband; 4) whether the defendant was under the influence of a controlled
substance when arrested; 5) whether the defendant possessed other contraband when
arrested; 6) whether the defendant made incriminating statements when arrested;
7) whether the defendant attempted to flee; 8) whether the defendant made furtive
gestures; 9) whether there was an odor of the contraband; 10) whether other
contraband or drug paraphernalia was present; 11) whether defendant owned or had
the right to possess the place where the drugs were found; and 12) whether the place
the drugs were found was enclosed. 
Id.; see Chavez v. State, 769 S.W.2d 284, 288 (Tex. App.‒Houston [1st Dist.] 1989, pet. ref'd). "The
number of affirmative links present is not as important as the degree to which they tend to link the
defendant to the controlled substance." Stubblefield v. State, 79 S.W.3d 171, 174 (Tex.
App.‒Texarkana 2002, pet. ref'd). In dicta, this Court has also recognized that possessing large
amounts of cash may be a factor in considering whether the defendant is linked to the contraband. 
Id.
            Rider argues he was not the individual described in the warrant, which was closer to the
description of Marcus Alexander.


 Dorothy Rider testified Rider did not reside at the apartment and,
when he stayed overnight, he slept on the couch, not in the bedroom. Even if Rider did not reside
at the apartment, he frequently visited, stayed overnight, left clothes at the apartment, and received
mail at the apartment. Rider also contends that other individuals, including Dorothy Rider's
boyfriend, who lived at the apartment, and individuals who made deliveries to the family food
delivery business, had access to the apartment.
            The affidavit for the search warrant described the suspect as: "A black male described as
being approximately 29 years of age, 5'06" in height and weighing approximately 180 pounds. The
suspect also wears a gold medallion on a neck chain." Dorothy Rider testified that she had never
seen him wear a gold chain and that he did even not own one. However, Rider was photographed
at the scene wearing a gold medallion. The police discovered cocaine in the pocket of a black leather
jacket located in the bedroom closet. Other clothing with Rider's initials were found in the same
closet as the leather jacket. At the scene, officers discovered a photograph of Rider wearing a black
leather jacket. 
            The State presented evidence of several of these factors tending to link Rider to the
contraband. He was in the apartment when paraphernalia and contraband were discovered. Clothes
with Rider's initials and a receipt for towing services bearing Rider's name and the address of the
apartment indicate that the bedroom may have been Rider's. Although none of the marked money
from the buy made by the confidential informant earlier that day was found, Rider was in possession
of $965.00 when arrested, even though he had not been formally employed for "a couple months." 
We believe these factors generate the necessary reasonable inferences to link Rider to the
contraband. When viewed in the light most favorable to the prosecution, a rational juror could have
concluded beyond a reasonable doubt Rider possessed the cocaine. While Rider's guilt was not a
foregone conclusion, the jury's verdict is not so contrary to the overwhelming weight of the evidence
as to be clearly wrong, or so weak as to be clearly wrong or manifestly unjust. We find legally and
factually sufficient evidence to support the jury's decision.
Probable Cause for Issuance of Search Warrant
            Rider contends in his third point of error the trial court erred in denying his motion to
suppress based on deficiencies in the search warrant. Specifically, Rider argues that 1) there was no
basis for the belief the informant had actually been to the location, 2) there was no basis for the belief
the informant had observed the suspect in possession of cocaine, 3) "criminal activity" was too vague
a basis for a finding of reliability, and 4) a "no knock" entry cannot be based on the general
occurrences in drug trafficking. Due to these insufficiencies, Rider argues the magistrate lacked a
"substantial basis" for a finding of probable cause.
            Due to the special circumstances which arise when probable cause is derived from statements
given by anonymous informants, the United States Supreme Court developed the Aguilar-Spinelli
analysis, which required a two-pronged test: 1) the informant obtained the relevant information in
a reliable manner, and 2) the informant was reliable. See Aguilar v. Texas, 378 U.S. 108 (1964),
overruled, Illinois v. Gates, 462 U.S. 213 (1983); see also Spinelli v. United States, 393 U.S. 410
(1969), overruled, Illinois v. Gates, 462 U.S. 213 (1983). However, the United States Supreme
Court has subsequently relaxed the rigid standards in the Aguilar-Spinelli analysis to allow
consideration of the totality of the circumstances. See Gates, 462 U.S. 213. The United States
Supreme Court reaffirmed that the reliability of hearsay statements, as measured by the informant's
veracity and basis of knowledge, should be scrutinized by the magistrate making a probable-cause
determination. Id. In other words, the ultimate question is whether the statements are sufficiently
reliable for a finding of probable cause, but a deficiency in one of the two factors of reliability of the
informant may not be fatal if the totality of the circumstances indicate reliability. 
            In a plurality decision, the Texas Court of Criminal Appeals adopted the reasoning of Gates
as the proper standard of review under the Texas Constitution as well. Bower v. State, 769 S.W.2d
887, 904 (Tex. Crim. App. 1989), overruled on other grounds, Heitman v. State, 815 S.W.2d 681,
685 (Tex. Crim. App. 1991) (indicating that the court was not "willing to march lock-step with
federal court interpretations of constitutional rights" as to state constitutional law); see Hall v. State,
795 S.W.2d 195, 197 (Tex. Crim. App. 1990); see also Martin v. State, 67 S.W.3d 340, 344 (Tex.
App.‒Texarkana 2001, pet. ref'd). 
            Our review of whether a search warrant was issued on the basis of probable cause is limited
to the four corners of the warrant. Gibbs v. State, 819 S.W.2d 821, 830 (Tex. Crim. App. 1991). 
Great deference should be paid to a magistrate's determination of probable cause, and warrants
should not thereafter be invalidated through hypertechnical interpretation of their supporting
affidavits. Gates, 462 U.S. at 236. The magistrate is permitted to draw reasonable inferences from
the facts and circumstances alleged. Ramos v. State, 934 S.W.2d 358, 363 (Tex. Crim. App. 1996). 
            Rider's first three complaints concern whether the magistrate could find probable cause, given
the totality of the circumstances. The affidavit in question states in relevant part:
That, Affiant was contacted by a confidential informant that stated he/she had been
to the location listed in paragraph one of this affidavit within seventy two (72) hours
of the issuance of this warrant and said confidential informant further advised that
he/she did at that time observe the suspect listed in paragraph two of this affidavit in
possession of cocaine.
That, Affiant believes the confidential informant's information to be true and
reliable, because said confidential informant has provided Affiant with information
relating to criminal activity, and that information did prove to be true and correct.
That, Affiant knows that the confidential informant is familiar with the appearance
of cocaine.

Rider contends there was no independent basis that the informant had actually been to the apartment
or had observed the suspect in possession of cocaine. As discussed above, hearsay statements from
an anonyomous informant can be sufficient provided the information was reliably obtained and the
informant is reliable. While independent corroboration would support probable cause, it is not
required. The magistrate is permitted to draw reasonable inferences from the facts and circumstances
alleged. Id. at 363. The magistrate was entitled to infer that, since the informant said he had been
to the location and observed the suspect in possession of cocaine, the cocaine was present at that
location. Third, Rider contends the statement that the informant had previously provided reliable
information regarding "criminal activity" was too vague to support a finding of reliability concerning
possession of a controlled substance. The main issue is whether the affidavit is specific enough for
a finding of a "substantial basis" for the determination of probable cause. The probable cause
affidavit must be specific enough for the magistrate to make a finding of probable cause based on
the facts contained in the affidavit and reasonable inferences from those facts. In our analysis, we
consider two questions. First, is the phrase "criminal activity" sufficient to indicate the informant
is reliable? Second, is the assertion that the informant is familiar with the appearance of cocaine
sufficient to satisfy the factor that the information was reliably obtained? The affidavit does not
contain any facts that reflect whether the officer had any personal basis for the knowledge that the
informant could identify cocaine. The issue is the extent an affidavit is required to state the
informant's qualifications to identify the controlled substance in question.
            The statement that the informant had provided information concerning "criminal activity in
the past which has proven to be correct" is sufficient to establish that the informant was reliable. 
Texas courts have affirmed findings of probable cause concerning reliability based solely on
providing reliable information in the past. See Capistran v. State, 759 S.W.2d 121, 128 (Tex. Crim.
App. [Panel Op.] 1982) (op. on reh'g); Daniels v. State, 999 S.W.2d 52, 56 (Tex. App.‒Houston
[14th Dist.] 1999, no pet.); Cerda v. State, 846 S.W.2d 533, 534 (Tex. App.‒Corpus Christi 1993,
no pet.). Further, based on the informant's having provided evidence of "criminal activity" in the
past does not suffer from a lack of a basis of personal knowledge of the affiant. The personal
knowledge of the affiant is obviously the result of prior tips to the affiant. Therefore, under Texas
law, the reliability of the informant factor is satisfied.
            The magistrate should also consider whether the information was reliably obtained. In order
to be reliably obtained, logic dictates the informant must be able to identify the controlled substance
in question. While it would be preferable if the affidavit contained facts concerning how the officer
knows the informant could identify the substance, Texas law does not strictly require such facts. 
Texas courts have held that an affidavit does not need to state an informant's qualifications to
identify a controlled substance.


 Since the affidavit does not have to specify the informant's
qualifications, the affidavit provides some basis for the conclusion that the information was reliably
obtained.
            Although Gates prohibits a finding of probable cause based on a "bare bones" affidavit
requiring a magistrate to rely on conclusory statements,


 given the totality of the circumstances,
sufficient facts exist to establish probable cause in this case. The informant personally observed the
drugs at the residence. The affidavit asserts that the informant had been present at the location to
be searched. The officer stated that the informant had been reliable in the past and was familiar with
cocaine. These facts give other indicia of reliability, which can form a substantial basis for finding
probable cause.
            Although the factor that the information was reliably obtained is not clearly satisfied, a
substantial basis for finding probable cause did exist under the totality of the circumstances. 
The task of the issuing magistrate is simply to make a practical, common-sense
decision whether, given all the circumstances set forth in the affidavit before him,
including the "veracity" and "basis of knowledge" of persons supplying hearsay
information, there is a fair probability that contraband or evidence of a crime will be
found in a particular place.

Gates, 462 U.S. at 238. "[A] deficiency in one may be compensated for, in determining the overall
reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id.
at 233. We are required to analyze the finding of probable cause based on a common-sense approach
rather than a hypertechnical analysis. We evaluate probable cause under a totality-of-the-
circumstances test, rather than any rigid set of criteria. Id. at 239. The magistrate is entitled to make
reasonable inferences from the affidavit. Id. at 240. A common-sense reading of the affidavit
indicates the informant has had experience with crack cocaine and could identify it. In the totality
of the circumstances, a single conclusory statement does not prevent the affidavit in this case from
establishing a substantial basis for probable cause through other indicia of reliability. Due to the
deference this Court must grant the magistrate, this Court affirms the trial court. 
"No Knock" Entry
            Rider argues that a "no knock" entry cannot be based on the general nature of drug-related
activity rather than specific information related to the particular case. The record does not contain
any specific objection sufficient to draw the trial court's attention to the "no knock" entry issue, nor
did Rider obtain a ruling specific to this issue. See Tex. R. App. P. 33.1. Since the issue was not
preserved for appeal, we are prohibited from considering it. 
Timing of Issuance of Search Warrant
            Rider contends that factually and legally insufficient evidence exists to support the finding
that the warrant was signed before the search. Because the time noted on the warrant is later than
the time Officer Wanda Wilkerson testified was in her report, Rider argues the evidence indicates
the warrant was not issued until after the search had occurred.
            A trial court's decision to grant or deny a motion to suppress is reviewed under an abuse of
discretion standard. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). The general
rule is that an appellate court should afford almost total deference to a fact-finder's determination of
the historical facts supported by the record, especially when the findings are based on an evaluation
of credibility and demeanor. Id. at 138. Where, as here, a fact-finder makes no explicit findings of
historical fact, the appellate court should view the evidence in the light most favorable to the
fact-finder's ruling and assume that the fact-finder made implicit findings of fact. Carmouche v.
State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). 
            Officer Wilkerson testified that the search began at 1:00 p.m. based on her report, but the
time noted on the search warrant indicated it was signed at 1:20 p.m. Officer Jason Brannon and
Officer Ron Benge testified that the search occurred around 2:00 p.m. Officer Wilkerson and Officer
Brannon both testified the warrant had been issued before the search was performed. The jury was
instructed that any search must be done after the search warrant was signed by the judge. Rider
argues that no rational juror could have found beyond a reasonable doubt that the warrant was issued
before the search. This Court is required to afford almost total deference to a fact-finder's
determination of the historical facts supported by the record, especially when the findings are based
on an evaluation of credibility and demeanor. Villarreal, 935 S.W.2d at 138. A rational juror could
have chosen to believe the police officers had the warrant before the search, but simply made a
mistake concerning the time. The Beaumont Court of Appeals has held that a technical error, such
as an error in the date, will not vitiate a search warrant when sufficient evidence such as testimony
of the police officers indicate it was properly issued. Turner v. State, 886 S.W.2d 859, 864 (Tex.
App.‒Beaumont 1994, pet. ref'd). Therefore, a rational juror could have found beyond a reasonable
doubt that the warrant was issued before the search. Nor can we say the great weight and
preponderance of the evidence indicates that such a conclusion is clearly wrong. 
Batson Challenge
            Rider's last point of error alleges the trial court erred in denying his challenge to the jury
panel based on Batson. The State used peremptory strikes on each of the three remaining
African-Americans on the jury panel. Rider objected to the strike pursuant to Batson. See Batson
v. Kentucky, 476 U.S. 79 (1986). Under Batson, a defendant must make a prima facie case of racial
basis in striking the juror. Id. at 93-94. A prima facie case of discrimination may be made by
showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. 
Id. at 93-96. Striking all the remaining African-American jurors is prima facie evidence of racial
basis. 
            The burden then shifts to the State to make a reasonable race-neutral explanation for the
strikes. Id. at 93. The State responded that each of the three jurors either knew Rider or knew of
him. Betty Jackson went to church with Rider's mother and grandmother. Michelle Bradley lived
in the same area and had seen Rider around the neighborhood. Kaitina Dobbins had known Rider
for eighteen years. Rider had also dated Dobbins' cousin. Although all three jurors testified they
could be objective, the State argued it felt the jurors' personal associations with Rider might affect
their ability to be fair and impartial. The trial court found the State's explanations to be race neutral. 
            If the State is able to make a reasonable race-neutral explanation, the trial court must then
determine whether the defendant has met his or her burden of proving purposeful racial
discrimination.


 Ford v. State, 1 S.W.3d 691 (Tex. Crim. App. 1999). The trial court's finding that
the defendant did not carry his or her burden of proof will not be overturned unless clearly erroneous. 
Chamberlain v. State, 998 S.W.2d 230, 236 (Tex. Crim. App. 1999). The trial court did not abuse
its discretion in denying the Batson challenge.
            We affirm the trial court's judgment.
 

                                                                        Jack Carter
                                                                        Justice

Date Submitted:          October 2, 2003
Date Decided:             October 22, 2003

Do Not Publish