ACCEPTED
07-15-00120-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
9/21/2015 9:13:41 AM
Vivian Long, Clerk

# IN THE COURT OF APPEALS FOR THE
## SEVENTH DISTRICT OF TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS

9/21/2015 9:13:41 AM

VIVIAN LONG
CLERK

| | | |
|---|---|---|
| JEREMY DAVID LUMMUS, APPELLANT | § § § § | |
| V. | § § | NO. 07-15-00120-CR |
| THE STATE OF TEXAS, APPELLEE | § § § | |

APPEALED FROM CAUSE NUMBER 1394641D IN THE 297TH DISTRICT COURT OF TARRANT COUNTY, TEXAS; THE HONORABLE DAVID HAGERMAN, PRESIDING.

§ § §
## STATE'S BRIEF
§ § §

Oral argument is not requested.

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

ALICIA COOPER AND
KIMBERLY V. MARTINEZ,
Assistant Criminal District
Attorneys

ANNE SWENSON, Assistant
Criminal District Attorney
State Bar No. 19575500
401 W. Belknap Street
Fort Worth Texas 76196-0201
(817) 884-1687
FAX (817) 884-1672
COAAppellateAlerts@tarrantcounty.com

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ....................................................................... iv

STATEMENT OF THE CASE ................................................................. 1

STATEMENT OF FACTS ....................................................................... 2

SUMMARY OF THE ARGUMENT ........................................................ 6

STATE'S RESPONSE TO APPELLANT'S ISSUE ONE
(Denial of Motion for Mistrial) ............................................................... 8

I.    Standard of Review -- Trial Court's Denial of a Motion for
      Mistrial ........................................................................................... 9

II.   The presumption of cure applies to a witness's reference to an
      extraneous offense ........................................................................ 10

III.  Speculation cannot transform mundane evidence into an
      extraneous offense ........................................................................ 11

IV.   Any harm was cured by the trial court's prompt instruction to
      disregard ........................................................................................ 15

STATE'S RESPONSE TO APPELLANT'S ISSUE TWO
(Lesser-Included Offense Instruction) .................................................. 22

I.    Appellant's present complaint was not preserved ......................... 23

II.   Standard of Review -- Lesser-Included Offense Instruction .......... 27

III.  There was no affirmative evidence that Appellant possessed
      less than four grams of methamphetamine, including any
      adulterants and dilutants ............................................................. 30

ii

A.     Appellant mischaracterizes Mr. Harris's testimony by presenting it out of context ...................................................... 32

       1.     Chemist Harris clearly testified, as a matter of chemical analysis, that there were over 23 grams of methamphetamine, including any adulterants and dilutants ..................................................................... 32

       2.     The context of the testimony Appellant invokes is Appellant's conflation of chemical analysis with historical facts about the recovery of the drugs ........... 34

B.     Even if Appellant's out-of-context distortion of Mr. Harris's testimony were accepted, Appellant's complaint would still lack merit ............................................................. 36

STATE'S RESPONSE TO APPELLANT'S ISSUE THREE
(Trial Court's Denial of Appellant's (Oral) Motion to Suppress) ............ 39

I.     Appellant's state claims should be held waived ............................ 41

II.     Appellant's third issue should be found to have been forfeited <u>on appeal</u> .................................................................... 42

III.     Appellant's present complaint was forfeited <u>at trial</u> ...................... 45

IV.     Appellant's unchallenged arrest for driving without a license entitled the police to search Appellant's pockets as a search incident to arrest ........................................................................ 45

CONCLUSION ............................................................................ 48

PRAYER ................................................................................... 48

CERTIFICATE OF COMPLIANCE ................................................... 48

CERTIFICATE OF SERVICE .......................................................... 49

# TABLE OF AUTHORITIES

CASE(S)                                                                    PAGE(S)

Aguilar v. State, Nos. 05-07-00660-CR,
    05-07-00661-CR, 2008 WL 3823992
    (Tex.App. -- Dallas Aug. 18, 2008, pet. ref'd)
    (not designated for publication)...................................................... 18

Aguilar-Pineda v. State, No. 05-13-01517-CR, 2015 WL 1314657
    (Tex.App. -- Dallas Mar. 20, 2015, no pet.)
    (mem. op. not designated for publication)..................................... 24

Archie v. State, 221 S.W.3d 695
    (Tex. Crim. App. 2007) ...................................................................... 9

Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710
    (2009) .................................................................................................. 46

Arnold v. State, 873 S.W.2d 27
    (Tex. Crim. App. 1993) ......................................................... 34,41,42

Austin v. State, 222 S.W.3d 801
    (Tex.App. -- Houston [14th Dist.] 2007, pet. ref'd) ...................... 16n

Bankston v. State, No. 05-14-00076-CR, 2015 WL 2265675
    (Tex.App. -- Dallas May 13, 2015, no pet.)
    (mem. op., not designated for publication)................................... 25n

Bell v. State, 90 S.W.3d 301
    (Tex. Crim. App. 2002) .................................................................... 44

Belton v. State, 900 S.W.2d 886
    (Tex.App. -- El Paso 1995, pet. ref'd)............................................. 12

Burleson v. State, No. 01-11-00866-CR, 2013 WL 772947
(Tex.App. -- Houston [1st Dist.] Feb. 28, 2013, pet. ref'd)
(mem. op., not designated for publication)......................................11

Campos v. State, 589 S.W.2d 424
(Tex. Crim. App. 1979) .......................................................................15

Conrad v. Texas BAC Home Loan Servicing, ___ S.W.3d ___,
No. 07-12-00305-CV, 2014 WL 545726
(Tex.App. -- Amarillo Feb. 7, 2014, no pet.) (mem. op.) .................43

Davis v. State, No. 09-03-521-CR, 2005 WL 1907011
(Tex.App. -- Beaumont Aug. 10, 2005, pet. ref'd)
(mem. op., not designated for publication)......................................33

DeBlanc v. State, 799 S.W.2d 701
(Tex. Crim. App. 1990) .......................................................................41

Dekneef v. State, 379 S.W.3d 423
(Tex.App. -- Amarillo 2012, pet. ref'd)..............................................14

Enriquez v. State, 21 S.W.3d 277
(Tex. Crim. App. 2000). ......................................................................38

Farrakhan v. State, 247 S.W.3d 720
(Tex. Crim. App. 2008) .......................................................................28

Feldman v. State, 71 S.W.3d 738
(Tex. Crim. App. 2002) .......................................................................27

Finney v. State, No. 2-02-034-CR, 2003 WL 151972
(Tex.App. -- Fort Worth Jan. 23, 2003, pet. ref'd)
(mem. op., not designated for publication)......................................25

Fuller v. State, 253 S.W.3d 220
(Tex. Crim. App. 2008) ....................................................................16n

Gamboa v. State, 296 S.W.3d 574
(Tex. Crim. App. 2009) ................................................................ 15

Garcia v. State, No. 05-00-01782-CR, 2002 WL 84403
(Tex.App. -- Dallas Jan. 23, 2002, no pet.)
(not designated for publication)............................................17n,19

Gardner v. State, 730 S.W.2d 675
(Tex. Crim. App. 1987) ................................................................ 15

Garza v. State, No. 03-04-00508-CR, 2006 WL 2706964
(Tex.App. -- Austin Sept. 21, 2006, pet. ref'd)
(mem. op., not designated for publication)................................... 20

Goad v. State, 354 S.W.3d 443
(Tex. Crim. App. 2011) ................................................................ 29

Godsey v. State, 719 S.W.2d 578
(Tex. Crim. App. 1986) ................................................................ 34

Green v. State, No. 01-10-01101-CR, 2012 WL 1143564
(Tex.App. -- Houston [1st Dist.] April 5, 2012, no pet.)
(mem. op., not designated for publication)................................... 12

Greer v. State, 783 S.W.2d 222
(Tex.App. -- Dallas 1989, no pet.) .............................................24n

Hall v. State, 225 S.W.3d 524
(Tex. Crim. App. 2007) ................................................................ 27

Hall v. State, 62 S.W.3d 918
(Tex.App. -- Dallas 2001, pet. ref'd)............................................ 34

Hampton v. State, 109 S.W.3d 437
(Tex. Crim. App. 2003) ..........................................................28,33

vi

Hawkins v. State, 135 S.W.3d 72
(Tex. Crim. App. 2004) ............................................................... 9,10

Heitman v. State, 815 S.W.2d 681
(Tex. Crim. App. 1991) ................................................................. 41

Hernandez v. State, 805 S.W.2d 409
(Tex. Crim. App. 1990) ................................................................. 11

Jefferson v. State, Nos. 05-08-00943-CR, 05-08-00944-CR,
05-08-00945-CR, 2010 WL 2574202
(Tex.App. -- Dallas June 29, 2010, pet. ref'd)
(not designated for publication) ................................................. 27

Kemp v. State, 846 S.W.2d 289
(Tex. Crim. App. 1992) ................................................................. 10

Laca v. State, 893 S.W.2d 171
(Tex.App. -- El Paso 1995, pet. ref'd) .......................................... 13

Ladd v. State, 3 S.W.3d 547
(Tex. Crim. App. 1999) ................................................................. 11

Longoria v. State, No. 13-12-00226-CR, 2013 WL 5675913
(Tex.App. -- Corpus Christi Oct. 17, 2013, no pet.)
(mem. op., not designated for publication) ................................. 44

McKithan v. State, 324 S.W.3d 582
(Tex. Crim. App. 2010) ................................................................. 28

Mapp v. Ohio, 367 U.S. 643
(1961) ...................................................................................... 40,42

Martinez v. State, No. 2-03-218-CR, 2004 WL 1700073
(Tex.App. -- Fort Worth July 29, 2004, no pet.)
(*per curiam* mem. op., not designated for publication) ................ 14n

Moreno v. State, 858 S.W.2d 453
(Tex. Crim. App. 1993) ................................................................. 11

Neidholt v. State, No. 08-11-00354-CR, 2013 WL 841624
(Tex.App. -- El Paso March 6, 2013, no pet.)
(not designated for publication) ............................................. 18,42

Norfleet v. State, Nos. 01-10-00429-CR,
01-10-00430-CR, 2011 WL 2436494
(Tex.App. -- Houston [1st Dist.] June 16, 2011, no pet.)
(mem. op., not designated for publication)................................... 16n

Ortega v. State, No. 11-99-00259-CR, 2001 WL 34373377
(Tex.App. -- Eastland Sept. 27, 2001, no pet.)
(not designated for publication)....................................................... 33

Plummer v. Reeves, 93 S.W.3d 930
(Tex.App. -- Amarillo 2003, pet. denied) ......................................... 44

Ramos v. State, 865 S.W.2d 463
(Tex. Crim. App. 1993) ............................................................30,34

Rice v. State, 333 S.W.3d 140
(Tex. Crim. App. 2011) ................................................................. 30

In re R.M., No. 08-02-00105-CV, 2002 WL 31840968
(Tex.App. -- El Paso Dec. 19, 2002, no pet.) ................................... 13

Rodriguez v. State, No. 01-05-00589-CR, 2006 WL 2042513
(Tex.App. -- Houston [1st Dist.] July 20, 2006, no pet.)
(mem. op., not designated for publication)................................. 19,20

Rojas v. State, 986 S.W.2d 241
(Tex. Crim. App. 1998) ................................................................. 19

Russell v. State, 798 S.W.2d 632
(Tex.App. -- Fort Worth 1990, no pet.) ........................................... 19

Schmidt v. State, 278 S.W.3d 353
(Tex. Crim. App. 2009) ................................................................ 36

Seals v. State, 187 S.W.3d 417
(Tex. Crim. App. 2005) ................................................................ 35

Segundo v.. State, 270 S.W.3d 79
(Tex. Crim. App. 2008) ................................................ 27,28,29,37

Skinner v. State, 956 S.W.2d 532
(Tex. Crim. App. 1997) ........................................................... 28,30

Snowden v. State, 353 S.W.3d 815
(Tex. Crim. App. 2011) ................................................................ 17

Solis v. State, No. 13-03-00262-CR, 2006 WL 2025154
(Tex.App. -- Corpus Christi July 20, 2006, no pet.)
(mem. op., not designated for publication) ................................ 18

State v. Reyes, No. WD-02-069, 2004 WL 937296
(Ohio Ct. App. April 30, 2004)
(not designated for publication) ................................................ 12

Sullens v. State, No. 02-13-00364-CR, 2015 WL 3523143
(Tex.App. -- Fort Worth June 4, 2015, pet. ref'd)
(mem. op., not designated for publication) ................................ 11

Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.,
106 S.W.3d 118
(Tex.App. -- Houston [1st Dist.] 2002, pet. denied) ................... 43,44

Threadgill v. State, 146 S.W.3d 654
(Tex. Crim. App. 2004) ................................................................ 29

Thrift v. State, 176 S.W.3d 221
(Tex. Crim. App. 2005) ................................................................ 10

Tolbert v. State, 306 S.W.3d 776
 (Tex. Crim. App. 2010) ................................................................. 23

Turner v. State, 886 S.W.2d 859
 (Tex.App. -- Beaumont 1994, pet. ref'd) ........................................ 41

United States v. Hastings, 461 U.S. 499, 103 S.Ct. 1974
 (1983) .......................................................................................... 17

Upchurch v. State, 23 S.W.3d 536
 (Tex.App. -- Houston [1st Dist.] 2000, pet. ref'd) ...................24n,25n

Wead v. State, 129 S.W.3d 126
 (Tex. Crim. App. 2004) .................................................................. 9

Wong Sun v. United States, 371 U.S. 471
 (1963) ......................................................................................40n,42

Wood v. State, 18 S.W.3d 642
 (Tex. Crim. App. 2000) ............................................................... 9,15

Wortham v. State, 412 S.W.3d 552
 (Tex. Crim. App. 2013) ............................................................28,29

CONSTITUTIONS, CODES & RULES:

TEX. CODE CRIM. PROC. art. 36.14.................................................. 24

TEX. CODE CRIM. PROC. art. 37.09.................................................25n

TEX. CODE CRIM. PROC. art. 38.21.................................................. 43

TEX. CODE CRIM. PROC. art. 38.22.................................................. 43

TEX. CODE CRIM. PROC. art. 38.23.................................................36n

TEX. CONST. art. I, § 9.................................................................. 43

TEX. CONST. art. I, § 10................................................................ 43

TEX. CONST. art. I, § 19................................................................ 43

TEX. HEALTH & SAFETY CODE § 481.002(49)................................... 32

TEX. HEALTH & SAFETY CODE § 481.112(a)...................................25n

TEX. HEALTH & SAFETY CODE § 481.115(a)...................................25n

TEX. R. APP. P. 9.4(i)(1)............................................................... 48

TEX. R. APP. P. 33.1(a)(1)(A)........................................................ 45

TEX. R. APP. P. 38.1(i) ..................................................... 19,42,43,44

TEX. R. EVID. 403.......................................................................14n

TEX. R. EVID. 404(b) ...................................................................... 8

U.S. CONST. amend. I.................................................................... 43

U.S. CONST. amend. IV ................................................................. 43

U.S. CONST. amend. V .................................................................. 43

U.S. CONST. amend. VI ................................................................. 43

U.S. CONST. amend. IX ................................................................. 43

U.S. CONST. amend. XIV ............................................................... 43

IN THE COURT OF APPEALS FOR THE
SEVENTH DISTRICT OF TEXAS

JEREMY DAVID LUMMUS, §
    APPELLANT §
§
V. §     NO. 07-15-00120-CR
§
THE STATE OF TEXAS, §
    APPELLEE §

APPEALED FROM CAUSE NUMBER 1394641D IN THE 297TH
DISTRICT COURT OF TARRANT COUNTY, TEXAS; THE HONORABLE
DAVID HAGERMAN, PRESIDING.

TO THE HONORABLE SEVENTH COURT OF APPEALS:

STATEMENT OF THE CASE

THE CHARGE(S)..................POSSESSION OF METHAMPHETAMINE
WITH INTENT TO DELIVER 4-200 GRAMS
(COUNT ONE); POSSESSION OF METHAMPHETAMINE
4-200 GRAMS (COUNT TWO); AND REPEAT OFFENDER NOTICE
CR. I-6

THE PLEA(S)....................................NOT GUILTY (EACH COUNT);
TRUE (REPETITION)
CR. I-83; RR. IV-11-12; RR. V-100

THE VERDICT(S) (Jury)…….........................GUILTY (COUNT ONE);
TRUE (REPETITION)
CR. I-79, 87-89; RR. V-90

THE SENTENCE (Jury)……………..........27 YEARS IMPRISONMENT
WITH $359 IN COURT COSTS
CR. I-83, 87-89; RR. VI-27-28

1

STATEMENT OF FACTS

On December 2, 2014, Tarrant County Narcotics Unit (TCNU) investigators observed Appellant get into a motor vehicle and drive away.[1] The investigators are aware that Appellant does not possess a valid driver's license.[2] And they relay that information (along with the vehicle's description and license plate number) to a nearby police patrol unit, who proceeds to pull over Appellant's vehicle.[3]

After Appellant's vehicle finally pulls over and comes to a stop,[4] Appellant and his passenger jump out.[5] Appellant is subsequently arrested for driving without a driver's license.[6] Incident to that arrest, the police pat down Appellant's outer clothing,[7] removing a digital scale (SX-3),[8] commonly used for weighing narcotics,[9] and a cell phone (SX-4) from

---

[1] RR. V-41-42; RR. IV-82-83 (investigators were working in an undercover capacity). As part of an investigation involving Appellant, TCNU was surveilling Appellant's home. RR. IV-43, 78-80.

[2] RR. IV-82; RR. V-41.

[3] RR. IV-24-25, 83-84. SX-5 is a photograph taken off of Google Maps showing where the traffic stop occurred. RR. IV-69-71.

[4] RR. IV-23-24, 26.

[5] RR. IV-28, 52, 74-75.

[6] RR. IV-34-35, 90; SX-9 ("Stipulation of Testimony").

[7] RR. IV-35, 56-57.

[8] RR. IV-36 (police removed the batteries from SX-3).

[9] RR. IV-37; see also RR. V-53. Sergeant Tim Denison, who is with the White Settlement Police Department (RR. IV-17), testified that while digital

Appellant's pocket(s).[10]  Next, the police place Appellant in the backseat of a patrol car.[11]

While in the backseat of the patrol car, Appellant managed to move his handcuffed hands from behind his back to the front of his body.[12] Appellant then wiggled around and removed plastic baggie(s) from underneath his clothing.[13]

scales are not illegal "I would say better than 95 percent of the time that I come across them it's involved in narcotics." RR. IV-56; RR. V-53 ("Digital scales are often used to ensure the amount that's being sold;" street users do not normally carry around a scale.).

[10]    RR. IV-35, 55.  Sergeant Denison testified that he removed the digital scale from Appellant's pants pocket.  RR. IV-37-38.

[11]    RR. IV-35, 38.  Once Appellant was placed in the backseat of the patrol unit, the camera facing the back of that patrol unit was turned on.  RR. IV-38; SX-2 at 15:30:31 (patrol car camera starts recording).

SX-2 is a DVD containing the redacted version of the patrol car video.  SX-2 was introduced into evidence for all purposes.  RR. IV-31-32.  (For purposes of citation, the State is using the counter that is visible on the bottom, right corner of the DVD screen.)

[12]    Compare SX-2 at 15:30:07 (Appellant's hands are handcuffed behind his back as he is escorted to the patrol car) with SX-2 at 15:31:25 (Appellant's hands no longer appear to be behind his back); see also RR. IV-41-42 ("if they are putting their hands in front of them, they -- you know, they -- you don't know what the intentions of that -- that -- that action is for").  The handcuffs could be used as a weapon.  RR. IV-42-43.

[13]    SX-2 at 15:30:41-:35:27 (Appellant starts squirming and wiggling around almost immediately.  He is breathing heavily as he twists, turns and contorts his body this way and that.).

3

Appellant ripped into the plastic baggie(s) with his hands (and possibly his teeth)[14] and spread a crystalline substance (later identified as methamphetamine)[15] all over the backseat area and floorboard(s) of the patrol car.[16] When the police noticed what was happening, they removed

---

[14]    SX-2 at 15:35:10-:11 (audible ripping/tearing sound); SX-2 at 15:35:34-35:47 (audible spitting sounds); SX-2 at 15:38 (Appellant puts something in his mouth); SX-2 at 15:43:10 (same); SX-2 at 15:39:46-45:50 (repeated foot scraping/foot shuffling/spreading-with-feet noises can be heard followed by spitting in the direction of the floorboard).

[15]    RR. IV-88-89 ("It looked like a chalk that had been smushed on the -- the bottom of the floorboard of the police car."); SX-7 (chemist's report); RR. V-26 (chemist testifies that "23.78 grams is the bulk of crystalline substance") (emphasis added); RR. V-27 (crystal substance contains methamphetamine); RR. V-29 (same); RR. V-32 (after separating out debris, chemist was confident that there was more than four grams of methamphetamine, including any adulterants and dilutants, that went together to make crystallized substance); see also SX-8 (two sandwich bags with handtied knots on one end recovered from patrol vehicle); RR. V-50 (sandwich bags were wet to touch and torn when Investigator David Mac Bennett recovered them from the backseat of the patrol car; Investigator Bennett further testified that "[p]art of the baggies still had white crystal substance in them that I removed as much as possible [of the white crystal substance] and bagged" it in SX-6).

[16]    RR. IV-41 ("there was a large amount of crystal rock type substance that was scattered all over the floorboard and backseat area of the patrol car"); RR. V-40 (there was "a large amount of a white crystal substance in the floorboard and specifically by the lower doorjamb molding"); SX-2 at 15:37:25-:45:50 (Appellant can be seen and heard digging around the doorjamb of the patrol car; spreading/rubbing/scraping/rustling/spitting sounds are also audible).

Appellant from the patrol car and placed him on the ground.[17] They then collected evidence from inside and outside the patrol car.[18]

Investigator Randy Baker[19] testified that he did not ask Appellant for consent to search Appellant's person or property.[20] Sergeant Denison testified that he requested consent to search the trunk of Appellant's vehicle, but was denied.[21]

---

[17]    RR. IV-41. Appellant is lying on the ground "crying and crying." RR. IV-87. "He was upset." RR. IV-90.

[18]    RR. IV-59-60; RR. V-44-46; SX-2 at 15:36:40-37:00 (Appellant throws something out of the patrol car); see also SX-6 (methamphetamine that was gathered by police from the rear of the patrol car, as well as a scant amount that police recovered from the treads of Appellant's shoes); RR. V-50.

Investigator Bennett, who handled the evidence (RR. IV-59; RR. V-44), testified that he "used a Leatherman tool to loosen one bolt to get underneath the lower door [molding], to raise it up and get around the rubber seal where a lot of the suspected methamphetamine had been pushed." RR. V-45. "[I]t took me approximately 30 to 40 minutes of meticulous time in the backseat of that floorboard to try to get as much of the evidence as I could." RR. V-45. The methamphetamine was gathered "[p]inch by pinch by pinch." RR. V-44.

[19]    RR. IV-76-78 (Investigator Baker, a veteran certified peace officer, is employed by the Blue Mound Police Department and works as an officer/investigator with TCNU).

[20]    RR. IV-93-94.

[21]    RR. IV-39.

## SUMMARY OF THE ARGUMENT

STATE'S RESPONSE TO APPELLANT'S ISSUE ONE: The comment that Appellant complains about was not extraneous-offense evidence and, even if it was, it was cured by the trial court's prompt instruction to disregard. In addition, Appellant's request that this Court "send a message" is not a legitimate consideration.

STATE'S RESPONSE TO APPELLANT'S ISSUE TWO: Appellant's complaint was not preserved at trial as Appellant's trial objection does not comport with Appellant's complaint on appeal. In the alternative, the trial court did not err when it denied Appellant's requested jury instruction on the lesser-included offense of possession of methamphetamine in the amount of one gram or more, but less than four grams. Appellant's argument relies upon a characterization of the record that (impermissibly) plucks portions of Mr. Harris's testimony out of context. Appellant also attempts to convert a witness's lack of knowledge into affirmative evidence raising a need for a jury instruction.

6

STATE'S RESPONSE TO APPELLANT'S ISSUE THREE: Appellant has not argued his federal and state claims separately. Under these circumstances, Appellant's state claims should be held waived. The State has no real idea what Appellant's specific search and/or seizure complaint might be, and for that reason, Appellant's third issue should be summarily overruled as inadequately briefed. Whatever the search complaint Appellant is attempting to present on appeal, it was not properly preserved at trial. If the Court decides that Appellant is challenging the search incident to Appellant's arrest, Appellant's unchallenged arrest for driving without a license entitled the police to search Appellant's pockets as a search incident to arrest.

STATE'S RESPONSE TO APPELLANT'S ISSUE ONE

*Denial of Motion for Mistrial*

Appellant's first issue complains that incurable harm was caused when the trial court denied his motion for mistrial after a police officer/TCNU investigator (Randy Baker) testified that he knew Appellant "from a prior case." Appellant's br. at 4 (citing RR. IV-80). The premise of Appellant's complaint – that Appellant's brief makes no real attempt to justify – is that any testimony which might support an inference that the defendant committed an extraneous offense triggers TEX. R. EVID. 404(b). Appellant's br. at 6 (arguing that Investigator Baker "either knew better, or should have known better; or ignored the specific pre-trial instructions of the prosecutor" and "put the skunk in the jury box").[22]

---

[22] Prior to the start of testimony, defense counsel stated that Appellant "had filed a motion in limine not to go into extraneous matters . . . . " RR. IV-7-8; see generally CR. I-16 at #5 ("Defendant's Motion in Limine Number One"). Defense counsel further stated that he and the prosecutor had talked about this and that it was defense counsel's understanding from police reports "that there was a [Confidential Informant] involved [who] claimed to have made multiple drug transactions at [Appellant's] residence prior to [the] date of this offense." RR. IV-8.

Defense counsel went on to state that his "understanding of what the State is saying is we are not going to go into specific detail of the CI -- . . . previous sales . . . ." RR. IV-8. "[J]ust that there was [a police] investigation, they did a traffic stop, [Appellant] didn't have a driver's license [a fact that Appellant was stipulating to], they placed him under arrest, and then we go on from there."

8

The State will show that the comment Appellant complains about was not extraneous-offense evidence and, even if it was, any error was cured by the trial court's prompt instruction to disregard. RR. IV-80. The State will further show that Appellant's request that this Court "send a message"[23] is not a legitimate consideration.

I.    *Standard of Review -- Trial Court's Denial of a Motion for Mistrial*

A trial court's refusal to grant a mistrial is reviewed under an abuse of discretion standard. Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). The trial court ruling should be upheld if it is within the zone of reasonable disagreement. Wead, 129 S.W.3d at 129.

A mistrial is required only in extreme circumstances where the prejudice is incurable. Archie v. State, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)

---

RR. IV-8-9. To which the prosecutor responded: "I have admonished my witnesses not to talk about any history, et cetera. Hopefully there will be no mistakes." RR. IV-9.

Defense counsel then clarified "And for the record, we're just asking the Court to grant the motion in limine with respect to extraneous offense." RR. IV-9. The trial court "grant[ed] that motion in limine," instructing the parties to please approach the bench before getting into any extraneous offenses. RR. IV-9.

(mistrial is appropriate for only "highly prejudicial and incurable errors"). A mistrial is the trial court's remedy for improper conduct that is so prejudicial that expenditure of further time and expense would be wasteful and futile. <u>Hawkins</u>, 135 S.W.3d at 77.

## II. *The presumption of cure applies to a witness's reference to an extraneous offense.*

"I[t] is well-settled that testimony [allegedly] referring to or implying extraneous offenses can be rendered harmless by an instruction to disregard by the trial judge, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind." <u>Kemp v. State</u>, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992). Furthermore, reviewing courts will presume that a jury follows a trial court's instruction to disregard testimony, absent some proof from the record that the jury did not or could not follow such an instruction. <u>Thrift v. State</u>, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (presumption of cure was not rebutted; appellant failed to "point[ ] to evidence that the jury failed to follow the trial court's instructions").

---

[23] <u>See</u> Appellant's br. at 7.

Whether a witness's improper reference to an extraneous offense warrants a mistrial depends on the particular facts of the case. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); Burleson v. State, No. 01-11-00866-CR, 2013 WL 772947, at *9-10 (Tex.App. -- Houston [1st Dist.] Feb. 28, 2013, pet. ref'd) (mem. op., not designated for publication) (unembellished reference to defendant's involvement in arson of a church was cured by trial court instruction).

III. *Speculation cannot transform mundane evidence into an extraneous offense.*

If evidence fails to show that an offense was committed or that the accused was connected to the offense then it is not evidence of an extraneous offense. Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993). Speculative theories about why certain testimony amounted to a reference to an extraneous offense are routinely rejected. See, e.g., Hernandez v. State, 805 S.W.2d 409, 413 (Tex. Crim. App. 1990) (detective's testimony that he worked in Crime Analysis Unit which kept up with "active offenders" was not evidence that Appellant had committed an extraneous offense); Sullens v. State, No. 02-13-00364-CR, 2015 WL 3523143, at *2 (Tex.App. -- Fort Worth June 4, 2015, pet. ref'd) (mem. op.,

not designated for publication) (rejecting theory that (1) domestic assault victim's testimony that she had a high pain threshold implied (2) that she had previously been beaten by defendant).

The fact that Investigator Baker knew Appellant from a prior case is not evidence that Appellant committed an extraneous offense. Green v. State, No. 01-10-01101-CR, 2012 WL 1143564, at *2 (Tex.App. -- Houston [1st Dist.] April 5, 2012, no pet.) (mem. op., not designated for publication) (officer's testimony that he knew defendant and knew his address was not evidence of extraneous offense); Belton v. State, 900 S.W.2d 886, 900 (Tex.App. -- El Paso 1995, pet. ref'd) (officer's testimony that he knew appellant's address from "past dealings" was not evidence of an extraneous offense); see also State v. Reyes, No. WD-02-069, 2004 WL 937296, at *8 (Ohio Ct. App. April 30, 2004) (not designated for publication) (all that could be gleaned from arresting officer's statement that he stayed out of sight until the take down signal was given because defendant knew the officer and if the officer's face was seen it would all be over was that defendant knew that the arresting officer was a police officer; officer never said how defendant would have known him).

As the trial court observed (in a hearing outside the presence of the jury, see RR. IV-100), Investigator's Baker's comment that he knew Appellant from a prior case:

> . . . can mean anything. [Appellant] could be a witness. He could have been present. Yeah, he could have been the target, but he could have been standing by. He could have been just there merely present at a previous case.

RR. IV-103.

Appellant's argument on appeal seems to assume that if Investigator Baker knew Appellant from a previous case it must have been because Appellant had committed an extraneous offense. See also RR. IV-104. Thus, Appellant relies upon an assumption that Rule 404(b) is designed to combat in order to claim a Rule 404(b) violation. See In re R.M., No. 08-02-00105-CV, 2002 WL 31840968, at *3 (Tex.App. -- El Paso Dec. 19, 2002, no pet.) (evidence that juvenile probation department employee visited defendant's home was not evidence that juvenile had committed an extraneous offense).

Moreover and even if the police officer had testified that Appellant had been a suspect in a prior case, such testimony would not amount to evidence of an extraneous offense. Laca v. State, 893 S.W.2d 171, 186

13

(Tex.App. -- El Paso 1995, pet. ref'd) (evidence that the defendant had been in detention without more is not evidence of an unadjudicated extraneous offense); see also Dekneef v. State, 379 S.W.3d 423, 430 (Tex.App. -- Amarillo 2012, pet. ref'd) (vague testimony that defendant had been a "suspect" in a prior case was cured by trial court's instruction to disregard; "[t]he fact that [the detective] used the word 'suspect' in his answer without further explanation does not constitute a statement that is 'clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds'").[24]

The testimony challenged by Appellant was not extraneous offense evidence. Accordingly, there is no need to address whether there was incurable error.

---

[24] If the officer had testified that Appellant was a suspect in a prior case, such testimony might be vulnerable to a Rule 403 objection. See Martinez v. State, No. 2-03-218-CR, 2004 WL 1700073, at *3-4 (Tex.App. -- Fort Worth July 29, 2004, no pet.) (*per curiam* mem. op., not designated for publication) (testimony that DWI defendant had taken sobriety tests twice before on night of arrest was inadmissible under Rule 403, but was harmless). Neither at trial, nor on appeal has Appellant lodged a Rule 403 complaint regarding the complained-of evidence.

IV.  *Any harm was cured by the trial court's prompt instruction to disregard.*

A reviewing court generally considers instructions given to the jury to be sufficient to remedy most improprieties that occur during a trial and presumes that a jury will follow the trial court's instructions.  Gamboa v. State, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); see Gardner v. State, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987). Therefore, it is assumed that the harm created by the error has been cured by the instruction to disregard, "except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds." Campos v. State, 589 S.W.2d 424, 428 (Tex. Crim. App. 1979); see also Wood, 18 S.W.3d at 648.

The trial court promptly instructed the jury to disregard the testimony that Appellant complains about. RR. IV-80.  While Appellant's briefing mentions that the trial court instructed the jury to disregard the complained-of statement, see Appellant's br. at 5, Appellant's briefing completely ignores the strong presumption of cure. See id. at 4-6.  Instead

of attempting to rebut the presumption of cure, Appellant's briefing offers two non-legal arguments.

First, Appellant invokes the folksy skunk-in-the-jury-box slogan to suggest that instructions to disregard never work. Appellant's br. at 6. To the extent that such a claim is any argument at all, it is an argument that can only be addressed by the Court of Criminal Appeals. As set forth previously, the well-settled law in Texas is that jurors are presumed to follow the trial court's instructions.[25]

---

[25] Appellant's brief also notes the trial court's in limine ruling (RR. IV-9). Appellant's br. at 3. But the curability of the complained-of comment has nothing to do with the trial court's in limine ruling.

A violation of an in limine ruling is a basis for a contempt finding – it is not a basis for <u>appellate relief</u>:

> As the Court of Criminal Appeals explained, "The violation of a motion in limine may entitle a party to relief, but any remedies available with regard to such a violation are with the trial court. If its order has been violated, the trial court may apply the sanctions of contempt or take other appropriate action." Brazzell v. State, 481 S.W.2d 130, 131 (Tex.Crim.App.1972).

<u>Norfleet v. State</u>, Nos. 01-10-00429-CR, 01-10-00430-CR, 2011 WL 2436494, at *3 (Tex.App. -- Houston [1st Dist.] June 16, 2011, no pet.) (mem. op., not designated for publication); <u>Austin v. State</u>, 222 S.W.3d 801, 813-16 (Tex.App. -- Houston [14th Dist.] 2007, pet. ref'd) (where witness violated in limine ruling {in injury to a child trial} by mentioning that another of defendant's children had died, appellate court looked solely to impact of evidence on jury in determining whether a mistrial was required); <u>see</u> <u>also</u> <u>Fuller v. State</u>, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) ("A motion *in limine* . . . is a preliminary matter and normally preserves nothing for appellate review.") (italics in original); <u>see</u>

Second, Appellant urges the Court to find that the harm was not cured so as to "send a message." Appellant's br. at 6. Appellant's punitive theory of harm analysis has been expressly repudiated by the Court of Criminal Appeals and the United States Supreme Court. United States v. Hastings, 461 U.S. 499, 507, 103 S.Ct. 1974, 1979 (1983) ("the interests preserved by the doctrine of harmless error cannot be so lightly and casually ignored in order to chastise what the court viewed as prosecutorial overreaching"); Snowden v. State, 353 S.W.3d 815, 821 (Tex. Crim. App. 2011) ("the harmless-error standard was never intended to satisfy any punitive, deterrent, or remedial purpose"). Appellant's request for the Court to "send a message" should be seen for what it plainly is: a request for an undeserved windfall.

Since Appellant makes no actual argument attempting to rebut the presumption of cure, Appellant's first issue should be overruled without

generally Garcia v. State, No. 05-00-01782-CR, 2002 WL 84403, at *1 (Tex.App. -- Dallas Jan. 23, 2002, no pet.) (not designated for publication) (refusing to address complaint that extraneous offense evidence violated trial court's in limine order because in limine orders preserve nothing for appeal and appellant's complaint on appeal did not comport with his relevancy trial objection).

consideration of whether the alleged error was cured. Neidholt v. State, No. 08-11-00354-CR, 2013 WL 841624, at *2 (Tex.App. -- El Paso March 6, 2013, no pet.) (not designated for publication) (because appellant failed to brief issue of presumption that instruction to disregard cured harm when deputy testified that he knew appellant from "past investigations," appellate court refuses to address merits of claim that mistrial was required: "By failing to explain how Deputy Montanez's comment was incurable, Neidholt has inadequately briefed his issue and, since we have no independent duty to make his arguments for him, presents nothing for our review."); Aguilar v. State, Nos. 05-07-00660-CR, 05-07-00661-CR, 2008 WL 3823992, at *9 (Tex.App. -- Dallas Aug. 18, 2008, pet. ref'd) (not designated for publication) (appellate court holds seven issues inadequately briefed where appellant did not explain or address why the instructions to disregard did not suffice to cure the harm, if any, with respect to the questions or statements complained about); see also Solis v. State, No. 13-03-00262-CR, 2006 WL 2025154, at *5 (Tex.App. -- Corpus Christi July 20, 2006, no pet.) (mem. op., not designated for publication) (complaint forfeited by appellant's failure to justify claim that instruction

18

to disregard did not cure error in prosecutor's jury argument); <u>see</u> <u>generally</u> TEX. R. APP. P. 38.1(i).

Alternatively, any harm was surely cured in the present case. "A witness's inadvertent reference to an extraneous offense is generally cured by a prompt instruction to disregard." <u>Rojas v. State</u>, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998); <u>Russell v. State</u>, 798 S.W.2d 632, 634 (Tex.App. -- Fort Worth 1990, no pet.) (in capital murder trial, accomplice's testimony that he and defendant committed prior burglaries together was cured). In <u>Rodriguez</u>, cure was found after a deputy testified that the assault victim told him this was not the first time "something like this had happened." <u>Rodriguez v. State</u>, No. 01-05-00589-CR, 2006 WL 2042513, at *1-2 (Tex.App. -- Houston [1st Dist.] July 20, 2006, no pet.) (mem. op., not designated for publication); <u>see</u> <u>also</u> <u>Garcia</u>, 2002 WL 84403, at *2 (in indecency with a child prosecution, trial court's prompt instruction to disregard was sufficient to cure the error in admitting evidence that there was "some information" appellant had molested another child in Mexico and fled).

The Houston First Court of Appeals's reasoning for applying the presumption of cure in <u>Rodriguez</u> compares favorably to the present case:

19

Deputy Soefjes's reference to an extraneous offense was vague and isolated, was not directly solicited by the State, was not emphasized, and was not further referenced by the State. The State presented sufficient evidence that appellant had committed a Class C misdemeanor assault. Even though Dolores had recanted her claim that appellant had pushed her, it was for the jury, as the fact finder, to determine which version of the events it would believe. The record reflects that, after the defense objected, the trial court promptly instructed the jury to disregard the remark and reminded the jury in the charge not to consider it in determining appellant's guilt.

Rodriguez, 2006 WL 2042513, at *2.

If the comment in Rodriguez -- that this was not the first time "something like this had happened" -- was vague, then the comment in the present case was extremely vague.

Even if Investigator Baker's comment about knowing Appellant could somehow be construed as evidence that Appellant had committed an extraneous offense, it was one of the mildest and vaguest references imaginable. Garza v. State, No. 03-04-00508-CR, 2006 WL 2706964, at *3 (Tex.App. -- Austin Sept. 21, 2006, pet. ref'd) (mem. op., not designated for publication) ("Any inference of other bad acts raised by the phrase 'the

20

Zavala case' is slight, and Garza has not shown that an instruction to disregard would not have been effective to cure any error.").

Appellant's first issue should be overruled without consideration of whether the alleged error was cured. In the alternative, Appellant's first issue is without merit and should be overruled.

## STATE'S RESPONSE TO APPELLANT'S ISSUE TWO

### *Lesser-Included Offense Instruction*

In his second issue, Appellant claims that the trial court erred in refusing to submit a lesser-included offense instruction. Appellant's br. at 7-10. Specifically, Appellant contends that a fact issue was raised as to whether Appellant possessed only one to four grams of methamphetamine with intent to deliver. Id. at 7 (complaining only that Appellant raised a fact issue about his possessing a lesser amount).

The State will establish that Appellant's present complaint was not preserved at trial as Appellant's trial objection does not comport with Appellant's complaint on appeal. Alternatively, the trial court did not err when it denied Appellant's requested jury instruction on the lesser-included offense of possession of methamphetamine in the amount of one gram or more, but less than four grams. RR. V-66. Appellant's argument relies upon a characterization of the record that (impermissibly) plucks portions of John Harris's[26] testimony out of context. Appellant's br. at 6,

---

[26] Mr. Harris is a forensic chemist with the Tarrant County Medical Examiner's Office. RR. V-10.

10. Appellant also attempts to convert a witness's lack of knowledge into affirmative evidence raising a need for a jury instruction.

I. *Appellant's present complaint was not preserved.*

A defendant must request a lesser-included offense instruction before he will be allowed to complain on appeal about the absence of such an instruction. <u>Tolbert v. State</u>, 306 S.W.3d 776, 780 (Tex. Crim. App. 2010) ("lesser-included instructions are like defensive issues and . . . a trial court is not statutorily required to *sua sponte* instruct the jury on lesser-included offenses") (emphasis in original).

Here, Appellant either asked for a different lesser than he attempts to justify on appeal or he asked for a lesser on a different count than is at issue on appeal. RR. V-66. When the trial court asked the parties whether they had any requests, additions or deletions to the court's proposed charge, Appellant replied:

> Yes. We do have some proposed requested lesser-included jury instructions. * * * <u>On the offense of possession of controlled substance</u>, more than one, less than four grams based upon the testimony of John Harris.

RR. V-66 (emphasis added).

23

The offense Appellant was convicted of was possession of a controlled substance <u>with intent to deliver</u> 4-200 grams. CR. I-79, 87-89. It is hard to guess exactly what Appellant was requesting at trial. <u>See</u> RR. V-66. Appellant had an obligation to provide a <u>specific request</u> to the trial court. TEX. CODE CRIM. PROC. art. 36.14 (defendant must "present his objections . . . distinctly specifying each ground of objection" to preserve jury charge error); <u>Aguilar-Pineda v. State</u>, No. 05-13-01517-CR, 2015 WL 1314657, at *3 (Tex.App. -- Dallas Mar. 20, 2015, no pet.) (mem. op. not designated for publication) ("Appellant's request for an instruction at trial was not specific enough to preserve this issue for our review."). Given Appellant's statutory obligation, the lack of clarity in his request should result in a finding of waiver.

There are at least two plausible interpretations of Appellant's request that do not comport with Appellant's complaint on appeal. First, the most reasonable interpretation of Appellant's comment is that Appellant was asking for a lesser-included offense of <u>simple possession</u> 1-4 grams.[27]

---

[27] Texas courts have concluded that possession of a controlled substance is a lesser-included offense of possession with intent to deliver a controlled substance. <u>Upchurch v. State</u>, 23 S.W.3d 536, 538 (Tex.App. -- Houston [1st Dist.] 2000, pet. ref'd); <u>Greer v. State</u>, 783 S.W.2d 222, 224 (Tex.App. -- Dallas

24

Appellant makes no argument on appeal that there was any evidence that Appellant was only guilty of simple possession. <u>Finney v. State</u>, No. 2-02-034-CR, 2003 WL 151972, at *1 (Tex.App. -- Fort Worth Jan. 23, 2003, pet. ref'd) (mem. op., not designated for publication) (appellate complaint that instruction should have been given on the offense of simple possession of a controlled substance was not preserved at trial).[28] Instead, Appellant

1989, no pet.) ("[p]ossession of a controlled substance is the quintessential [lesser-included] offense of the crime of possession with intent to deliver").

A person commits the offense of possession with intent to deliver a controlled substance in Penalty Group 1 when "the person knowingly . . . possesses with intent to deliver a controlled substance . . . ." TEX. HEALTH & SAFETY CODE § 481.112(a). On the other hand, a person commits simple possession of a controlled substance in Penalty Group 1 when "the person knowingly or intentionally possesses a controlled substance . . . ." TEX. HEALTH & SAFETY CODE § 481.115(a). Thus, "intent to deliver" the controlled substance is the only significant difference between these two code provisions. <u>See</u> <u>generally</u> TEX. CODE CRIM. PROC. art. 37.09 (an offense is a lesser-included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged").

[28] In order to justify a claim that Appellant was entitled to a charge on simple possession, Appellant would need to point to evidence on appeal negating or rebutting the <u>intent to deliver</u>. <u>See</u> <u>Upchurch</u>, 23 S.W.3d at 540 ("The evidence above, when considered as a whole and under the controlling standard of review, raises more than a scintilla of evidence that appellant was guilty only of possession and had no intent to deliver."); <u>see</u> <u>also</u> <u>Bankston v. State</u>, No. 05-14-00076-CR, 2015 WL 2265675, at *4 (Tex.App. -- Dallas May 13, 2015, no pet.) (mem. op., not designated for publication) ("As to intent to deliver, appellant relies on Wheeler's testimony that five baggies containing methamphetamine were on Shirley's person and only one was found in another location, inside a duffel bag that appellant claimed to own. But appellant does not explain how this evidence negates or rebuts the element of intent to distribute. We see no logical connection between the location of the drugs within the pick-up truck and

merely argues that a fact issue was raised about the <u>amount</u> of the drugs. Appellant's br. at 10 ("possible" that Appellant was not criminally responsible for entire 23.78 grams).[29]

Second, Appellant's reference to the "offense of possession of controlled substance" (RR. V-66) could have been asking for a lesser in Count Two – which was the simple possession of 4-200 grams offense. <u>See</u> Appellant's br. at 9 ("Possession of [a] controlled substance 1 to 4 grams meets the definition of lesser included offense of possession of [a] controlled substance 4 to 200 grams."); <u>see</u> <u>generally</u> CR. I-6. Appellant was not convicted of Count Two and a complaint about that count would be moot.

---

the likelihood that appellant intended to deliver the drugs to another. Accordingly, we reject appellant's argument."); <u>see</u> <u>also</u> RR. V-51-52 (in Investigator Bennett's expert opinion, 23.78 grams is an amount consistent with someone who is dealing, explaining that 1/10th of a gram would be a single dosage unit so there are approximately 230 doses in 23.78 grams); RR. IV-35-38 (at the time of arrest, police found a digital scale in Appellant's pants pocket); RR. IV-56 (Sergeant Denison testified that "I would say better than 95 percent of the time that I come across [a digital scale] it's involved in narcotics."); RR. V-53 (in Investigator Bennett's expert opinion, street users do not normally carry around a scale; "[d]igital scales are often used to ensure the amount that's being sold").

[29] Chemist Harris testified that "23.78 grams is the bulk of [the] <u>crystalline</u> <u>substance</u>." RR. V-26 (emphasis added) (weight of crystalline substance after debris was separated out).

In sum, because the trial court was entitled to construe Appellant's request as seeking a different lesser-included instruction than the one Appellant claims entitlement-to on appeal, Appellant's complaint should be held forfeited at trial. Jefferson v. State, Nos. 05-08-00943-CR, 05-08-00944-CR, 05-08-00945-CR, 2010 WL 2574202, at *12-13 (Tex.App. -- Dallas June 29, 2010, pet. ref'd) (not designated for publication) (request for instruction on possession under one gram did not preserve appellate complaint that instruction on possession 1-4 grams was required).

II.     *Standard of Review -- Lesser-Included Offense Instruction*

Reviewing courts employ a two-prong test to determine whether a charge on a lesser-included offense was required. Hall v. State, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); Feldman v. State, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002); see also Segundo v.. State, 270 S.W.3d 79, 90 (Tex. Crim. App. 2008).

Under the first prong, the reviewing court determines whether the offense is actually a lesser-included offense of the offense charged. Hall, 225 S.W.3d at 535 (is lesser-included offense included within the proof necessary to establish the charged offense?); Feldman, 71 S.W.3d at 750.

This first prong is a question of law and does not depend upon the evidence produced at trial. Wortham v. State, 412 S.W.3d 552, 555 (Tex. Crim. App. 2013); McKithan v. State, 324 S.W.3d 582, 588 (Tex. Crim. App. 2010) (approving of functional-equivalence concept, which "requires courts to 'examine the elements of the lesser offense and decide whether they are functionally the same or less than those required to prove the charged offense,'" quoting Farrakhan v. State, 247 S.W.3d 720, 722–23 (Tex. Crim. App. 2008)).

Under the second prong, the reviewing court must determine whether the record contains some evidence "from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense." Segundo, 270 S.W.3d at 90-91. A lesser-included offense instruction is not required solely because "the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." Hampton v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003) (citing Skinner v. State, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). The

lesser-included offense must be a valid rational alternative to the charged offense. <u>Wortham</u>, 412 S.W.3d at 557; <u>Segundo</u>, 270 S.W.3d at 91.

Judge Alcala's concurrence in <u>Goad</u> points out that "[o]n a couple of occasions, [the Court of Criminal Appeals has] explicitly described appellate review of the second prong as <u>abuse of discretion</u>." <u>Goad v. State</u>, 354 S.W.3d 443, 451 (Tex. Crim. App. 2011) (Alcala, J., concurring); <u>Threadgill v. State</u>, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004) (holding in capital murder case that "trial court did not abuse its discretion in concluding that there was no evidence that would permit a jury rationally to find that appellant" was guilty only of the lesser-included offense of murder). And that "the amount of deference that an appellate court owes a trial court under the abuse-of-discretion standard may be affected depending on whether the evidence supporting the lesser-included offense is direct evidence or indirect, circumstantial evidence." <u>Goad</u>, 354 S.W.3d at 451 (Alcala, J., concurring) (footnote omitted).

III.  *There was no affirmative evidence that Appellant possessed less than four grams of methamphetamine, including any adulterants and dilutants.*

Appellant's second issue concerns the application of the second prong of the test for determining when a defendant is entitled to a lesser-included offense instruction. This prong requires that the record contain some evidence *"that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense." Skinner, 956 S.W.2d at 543 (emphasis in original); see also Rice v. State, 333 S.W.3d 140 145 (Tex. Crim. App. 2011) (same).  In applying this prong, the reviewing court must examine the entire record instead of plucking certain evidence from the record and examining it in a vacuum. Ramos v. State, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993) (defendant charged with aggravated sexual assault was not entitled to instruction on sexual assault as a lesser-included offense: "[v]iewed in the context of the entire record, appellant's statement that the victim resisted 'like most girls' failed to raise a fact issue on whether she resisted").

Appellant's entire argument hinges on two characterizations of the record:

- "[Chemist John Harris] said it is 'possible' that the substance containing methamphetamine could be less than four grams. (RR. V 25, 30)"; and

- "[Chemist John Harris] also testified that he did not know how much of the 23.78 grams is an adulterant or dilutant . . . . (RR. V-32-33)."

Appellant's br. at 8.

The State will show that there are at least two separate reasons why Appellant's argument lacks merit. First, Appellant reads the record out context. All Mr. Harris actually testified to was that he lacked personal knowledge of who was responsible for the creation of the material he tested. That fact will be true in every case where an expert in drug testing testifies. Second, even ignoring the context of Mr. Harris's statements, the comments Appellant relies on would still not require a lesser-included offense instruction.

31

A.   *Appellant mischaracterizes Mr. Harris's testimony by presenting it out of context.*

Appellant's speculative argument relates to the matter of adulterants and dilutants.  <u>See</u> Appellant's br. at 10.  Adulterants and dilutants are "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." TEX. HEALTH & SAFETY CODE § 481.002(49).

1.   *Chemist Harris clearly testified, as a matter of chemical analysis, that there were over 23 grams of methamphetamine, including any adulterants and dilutants.*

Chemist Harris testified that he removed the debris from SX-6 and the remaining crystalline substance weighed 23.78 grams.  RR. V-26, 32.[30] The weight of the crystalline substance in SX-6 was 23.78 grams.  RR. V-26; SX-7 (chemist's report).  There is no evidence that <u>the police added</u> any

---

[30]   The presence of debris in SX-6 was caused by Appellant's attempt to destroy evidence after he was arrested.  SX-2 at 15:30-41-:45:46; RR. IV-41; <u>see also</u> RR. IV-68 (evidence had been ground into floorboards of patrol car). Investigator Bennett testified that the amount of material in SX-6 that he collected from Appellant's shoes was "basically insignificant" in comparison to the amount of methamphetamine that the investigator recovered from the rear of the patrol car.  RR. V-44-46; <u>see also</u> RR. IV-60 (investigator used a handcuff key to gouge out crystalline substance from the grooves of Appellant's shoes); RR. IV-96 (same); <u>see generally</u> RR. IV-95 (asphalt parking lot).

crystalline material to SX-6.[31] There is also no evidence that any of the crystalline material that was weighed was anything other than methamphetamine, plus adulterants and dilutants.

Appellant's wild speculation that as much as 19.78 grams of the 23.78 grams of crystalline substance might have been neither methamphetamine nor adulterants and dilutants is not affirmative evidence requiring a lesser-included offense instruction. See Hampton, 109 S.W.3d at 441 (holding trial court erred by including instruction on lesser-included offense of sexual assault because complainant testified knife was used during sexual assault and failure to find knife was not affirmative evidence that no knife was used); Davis v. State, No. 09-03-521-CR, 2005 WL 1907011, at *1 (Tex.App. -- Beaumont Aug. 10, 2005, pet. ref'd) (mem. op., not designated for publication) (lesser offenses of 1-4 and 4-200 grams were not raised because there was no evidence that defendant had less than 400 grams of methamphetamine); Ortega v. State, No. 11-99-00259-CR, 2001 WL 34373377, at *2 (Tex.App. -- Eastland Sept. 27, 2001, no pet.)

---

[31] The debris that was added to SX-6 -- and then removed, prior to weighing (RR. V-20-21, 26) – was added by Appellant in his attempt to destroy evidence. SX-2 at 15:30-41-:45:50; RR. V-44-50. Thus, the fanciful hypothetical that Appellant concocted for Chemist Harris to answer had nothing to do with the

33

(not designated for publication) (chemist's inability to state <u>when</u> electronic scale was last re-calibrated did not raise the lesser-included offense of possession of less than four grams of amphetamine).

> 2. *The context of the testimony Appellant invokes is Appellant's conflation of chemical analysis with historical facts about the recovery of the drugs.*

Chemist John Harris's statement(s) cannot be plucked out of the record and considered in isolation and out of context. <u>Ramos</u>, 865 S.W.2d at 465; <u>Arnold</u>, 234 S.W.3d at 671-72 (citing <u>Godsey v. State</u>, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986)); <u>cf</u>. <u>Hall v. State</u>, 62 S.W.3d 918, 922 (Tex.App. -- Dallas 2001, pet. ref'd) (even though wife testified that defendant had no prior convictions, in context, she meant no arrests during her 21 years of marriage to defendant). At trial, Appellant suggested to Chemist Harris that any material added to SX-6 <u>by the police</u> would not be an adulterant or dilutant because it would not have been added-to the seized drugs by the hypothetical defendant. RR. V-22-23. Chemist Harris

---

facts of the present case.

responded that -- assuming the police added non-drug material to a hypothetical drug sample -- the best approach would be to do a purity check. RR. V-23.[32]

Appellant concluded his cross-examination of Chemist Harris with a series of confusing questions. RR. V-32-34. Even construing the answers in a light favorable to Appellant, all Mr. Harris said was that he didn't know whether there was any material in the 23.78 grams of crystalline substance that was neither methamphetamine nor an adulterant or dilutant.

Presumably, Mr. Harris meant that he didn't know whether there was crystalline material that had been added by the police. The only other interpretations of Mr. Harris's answers are that: (1) he didn't understand the questions; or (2) he didn't understand the definition of adulterants and dilutants. See Seals v. State, 187 S.W.3d 417, 420 (Tex. Crim. App. 2005) ("any substance that is added to or mixed with a controlled substance, regardless of when, how, or why that substance was added, may be added

---

[32] Presumably, Chemist Harris's logic was that if it could be proven that there was at least four grams of pure methamphetamine, it would be irrelevant

35

to the aggregate weight of the controlled substance as an adulterant or dilutant.").

In sum, the portions of Mr. Harris's testimony that Appellant invokes amount to nothing more that Mr. Harris acknowledging that he had no knowledge of who was <u>legally responsible</u> for the material he tested. He lacked this knowledge because he was not involved in the recovery of the drugs.[33] This is not evidence that Appellant possessed less than four grams of methamphetamine plus adulterants and dilutants.

B. *Even if Appellant's out-of-context distortion of Mr. Harris's testimony were accepted, Appellant's complaint would still lack merit.*

Even ignoring the fact that Mr. Harris was only acknowledging his lack of personal knowledge about the source of the drugs that he tested, Appellant's reliance upon Mr. Harris's comments would still lack merit. "[T]here must be affirmative evidence to rebut the greater element, and the jury may not simply disbelieve evidence establishing the greater." <u>Schmidt</u>

---

how much non-drug material police added.
[33] Appellant's situation would be akin to a defendant claiming entitlement to a TEX. CODE CRIM. PROC. art. 38.23 instruction on the basis of a chemist's testimony that he didn't know whether the police legally seized the drugs.

v. State, 278 S.W.3d 353, 362 (Tex. Crim. App. 2009); see also Segundo, 270 S.W.3d at 90-91 (holding trial court properly denied lesser-included offense instruction because evidence showed only that medical examiner said it was possible for sperm to remain in person's vaginal vault for up to 72 hours, but that evidence raised only theoretical possibility that rape and murder could be disconnected in time and space, and no evidence in record showed that victim's rape and murder were, in fact, disconnected based on medical evidence that they occurred at same time).

Mr. Harris never testified that there was less than four grams of methamphetamine plus adulterants and dilutants. Testimony from a chemist that he doesn't know something is not affirmative and specific testimony that a required threshold of drugs is lacking:

> And, deciding that appellant was entitled to a lesser-included offense instruction on delivery of any amount of marijuana less than the amount charged also would require plucking a single statement from the chemist's cross-examination testimony ("I can't tell you that I microscopically examined every single sample from a hundred and five bundles") and examining it in a vacuum. Also, plucking this portion of the chemist's cross-examination testimony from the record and examining it in a vacuum does not raise any fact issue on whether appellant is guilty only of delivery of more than 5 but less than 50 pounds of

marijuana. The only fact issue this cross-examination testimony arguably raises is that the chemist did not analyze a sample from an unknown number of the bundles."

Enriquez v. State, 21 S.W.3d 277, 279-80 (Tex. Crim. App. 2000).

Appellant's second issue is without merit and should be held waived and/or overruled.

## STATE'S RESPONSE TO APPELLANT'S ISSUE THREE

*Trial Court's Denial of Appellant's (Oral) Motion to Suppress*

In his third issue, Appellant makes some kind of constitutional and statutory search and/or seizure complaint. Appellant's br. at 10-12 (arguing that "[t]he trial court erred when it denied Appellant's motion to suppress," and citing RR. IV-31-37, 93-94; RR. V-73-74).[34] By way of

---

[34] On RR. IV-31-37, Sergeant Denison is testifying on direct examination about what happened after the backup officers arrived at the scene of Appellant's arrest. Id. In his "Statement of Facts" for this issue, Appellant discusses the cited portion of Sergeant Denison's direct testimony. Appellant's brief at 10-11.

On RR. IV-93-94, Investigator Baker is being cross-examined about (1) whether the police had obtained a search warrant prior to Appellant's arrest; (2) whether Investigator Baker asked Appellant for consent to search Appellant's person or property; (3) whether Investigator Baker was aware if anyone else asked Appellant for consent; (4) whether when Investigator Baker approached Appellant, Appellant's shoes were on or off; (5) whether Investigator Baker observed any other clothing being removed from Appellant at the scene of the arrest; and (6) whether Investigator Baker participated in the recovery of evidence. Id.

On RR. V-73-74, the trial court mentions that Appellant had "previously made a motion to suppress at the beginning of the evidence," and then states that that motion is denied. Id.; see also RR. IV-31-32 (Defense counsel informs the trial court that "we're going to be urging some objections on search and seizure, illegal search and arrest in this case. Subject to those objections, we have no other [objection] as to [the] form [of] this particular exhibit [SX-2].").

As mentioned earlier, SX-2 is a DVD containing the redacted version of the video that police collected from Sergeant Harvey's patrol vehicle. RR. IV-31-32. SX-2 was admitted for all purposes. Id.

SX-1 is the unredacted version of the same patrol car video. SX-1 was admitted for purposes of the record only. RR. IV-30-31.

support, Appellant cites <u>Mapp v. Ohio</u>, 367 U.S. 643 (1961),[35] and claims violations of his rights under U.S. CONST. amends. I, IV, V, VI, IX, XIV, TEX. CONST. art. I, §§ 9, 10, 19, and TEX. CODE CRIM. PROC. arts. 38.21, 38.22.[36]  Appellant's br. at 12.

Initially, the State notes that Appellant has not argued his federal and state claims separately.  Under the circumstances, Appellant's state claims should be held waived.  The State has no real idea what Appellant's specific complaint might be.  If the State had to guess, Appellant's complaint may have something to do with the search of Appellant's person following Appellant's arrest.  <u>See</u> Appellant's br. at 11.  The State believes that Appellant's third issue should be summarily overruled as inadequately briefed.  Whatever the search complaint Appellant is attempting to present on appeal, it was not properly preserved at trial.  If the Court decides that Appellant is challenging the search incident to Appellant's arrest, Appellant's unchallenged arrest for driving without a license entitled the police to search Appellant's pockets.

---

[35] No pinpoint cite/jump page for <u>Mapp</u> is provided.  Appellant's br. at 12.
[36] Appellant also cites to <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963), for the general proposition that the fruits of an unlawful search and seizure should also be suppressed.  Appellant's br. at 12.  Again, no pinpoint cite/jump page for

I.     *Appellant's state claims should be held waived.*

Because Appellant does not argue his federal and state claims separately, Appellant's state claims should be held waived. DeBlanc v. State, 799 S.W.2d 701, 706 (Tex. Crim. App. 1990). In Heitman, the Court of Criminal Appeals explained that briefs claiming constitutional violations under both the state and federal constitutions should provide argument, analysis and authority supporting and explaining each separate claim of constitutional violation. Heitman v. State, 815 S.W.2d 681, 690 n.23 (Tex. Crim. App. 1991). "[B]riefs should show how constitutional protection differs under the state constitution as opposed to the protection provided by similar provisions in the federal constitution." Arnold v. State, 873 S.W.2d 27, 33 n.4 (Tex. Crim. App. 1993) (emphasis added).

Nowhere in Appellant's briefing does he argue that the protections afforded under Texas law exceed or differ from the protections he enjoys under the United States Constitution. See Appellant's br. at 10-12. Accordingly, the Court should only address Appellant's arguments under the United States Constitution. Arnold, 873 S.W.2d at 33; Turner v. State, 886 S.W.2d 859, 864-65 (Tex.App. -- Beaumont 1994, pet. ref'd) ("Because

Wong Sun is provided. Appellant's br. at 12.

appellant has failed to substantively indicate how his protection under the Texas Constitution exceeds or differs from that provided to him by the Federal Constitution, we will not address appellant's state constitutional argument, citing <u>Arnold</u>, 873 S.W.2d at 33).

II. *Appellant's third issue should be found to have been forfeited <u>on appeal</u>.*

As mentioned earlier, the State has no real idea what Appellant's specific complaint might be other than it seems to involve the search of Appellant's person after Appellant was arrested following a traffic stop. Appellant's br. at 11 (citing to place in the reporter's record where defense counsel tells the trial court, "we're still going to be urging our motion to suppress as to Exhibits 3 [the digital scale] and 4 [cell phone]."). As also mentioned earlier, Appellant's briefing cites <u>Mapp</u> and <u>Wong Sun</u> in support of his third issue. <u>See</u> Appellant's br. at 12.

Neither of these two cited cases, however, is applied. <u>Neidholt</u>, 2013 WL 841624, at *2 ("Neidholt cites one single case, but fails to explain how it applies. In other words, Neidholt has not provided a 'clear and concise argument for the contentions made, with appropriate citations to authorities,'" quoting TEX. R. APP. P. 38.1(i)). In failing to explain <u>how</u>

42

"the detention, intrusion, invasion, search of Appellant, as well as the seizure and search of [unspecified] material and items therefrom violated Appellant's rights" under U.S. CONST. amends. I, IV, V, VI, IX and XIV, TEX. CONST. art. I, §§ 9, 10, 19 and TEX. CODE CRIM. PROC. arts. 38.21, 38.22, Appellant's br. at 12, Appellant's briefing appears to be inviting the Court to become Appellant's advocate and peruse the appellate record for any possible search and seizure issues. Accordingly, the State believes that Appellant's third issue should be summarily overruled as inadequately briefed.

Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "Rule 38 requires [a party] to provide [the appellate court] with such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." Conrad v. Texas BAC Home Loan Servicing, ___ S.W.3d ___, No. 07-12-00305-CV, 2014 WL 545726, at *3 (Tex.App. -- Amarillo Feb. 7, 2014, no pet.) (mem. op.) (quoting Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d 118, 128 (Tex.App. -- Houston [1st Dist.] 2002, pet. denied)). "This is not done by

merely uttering brief conclusory statements, unsupported by legal citations." Tesoro Petroleum, 106 S.W.3d at 128.

"It is not sufficient that appellant raise only a general constitutional doctrine in support of his request for relief." Bell v. State, 90 S.W.3d 301, 305 (Tex. Crim. App. 2002). And the Court should not allow Appellant to maneuver it into inventing arguments against controlling precedent.

In that light, the issue of whether the trial court was entitled to find that there was sufficient evidence of reasonable suspicion for the traffic stop should not be considered. TEX. R. APP. P. 38.1(i). Under the circumstances, addressing a search and seizure issue would require the Court to assume Appellant's role of crafting an argument attacking the trial court's judgment. Plummer v. Reeves, 93 S.W.3d 930, 931 (Tex.App. -- Amarillo 2003, pet. denied) ("[A]s judges, we are to be neutral and unbiased adjudicators of the dispute before us. Our being placed in the position of conducting research to find authority supporting legal propositions uttered by a litigant when the litigant has opted not to search for same runs afoul of that ideal, however. Under that circumstance, we are no longer unbiased, but rather become an advocate for the party."); Longoria v. State, No. 13-12-00226-CR, 2013 WL 5675913, at *4 (Tex.App.

44

-- Corpus Christi Oct. 17, 2013, no pet.) (mem. op., not designated for publication).

III.  *Appellant's present complaint was forfeited <u>at trial</u>.*

There is no written motion to suppress in the Clerk's Record.  CR. I; see also Appellant's br. at 10 (acknowledging that "[t]here was no formal written motion to suppress in this case").  During trial, Appellant alluded to a motion to suppress, <u>see</u> RR. IV-36; RR. V-73, or an improper search, <u>see</u> RR. IV-10, 31-32, but Appellant never voiced a <u>specific</u> objection.  TEX. R. APP. P. 33.1(a)(1)(A) (to preserve error for appellate review, complaint must be made with "sufficient specificity" unless specific grounds are apparent from context).  Indeed, Appellant seemed to acknowledge that there was no search and seizure because the State limited the evidence that it presented.  RR. V-66-67.  <u>But</u> <u>see</u> RR. V-73 (requesting ruling on motion to suppress).

IV.  *Appellant's unchallenged arrest for driving without a license entitled the police to search Appellant's pockets as a search incident to arrest.*

Appellant was arrested for driving without a license.  RR. IV-22, 35, 82, 90; <u>see</u> <u>also</u> RR. IV-4-5 (defense counsel stipulated that Appellant did

not have a driver's license).  Appellant's trial counsel agreed that Appellant was driving the car at the time of the stop.  RR. IV-9; SX-9 ("Stipulation of Testimony"); RR. V-8-9 (stipulation read to jury).  Appellant makes no claim to this Court – nor did he object in the trial court – that he was not properly arrested.

Police are entitled to search the person of an arrested person as a search incident to arrest.  Arizona v. Gant, 556 U.S. 332, 339, 129 S.Ct. 1710, 1716 (2009) (after arrest for driving without a license police could search person of arrestee, but not his car).  Appellant's briefing makes no claim that any physical evidence was obtained other than from Appellant's person.  Appellant's br. at 11.

After Appellant was arrested he was placed in the backseat of a patrol car.  RR. IV-35.  A video camera in the patrol car then recorded Appellant (RR. IV-38) as he removed methamphetamine from his person and attempted to spread it around in and outside of the patrol car.  SX-2 (DVD of patrol car video); SX-2 at 15:37:25-:45:50 (Appellant can be seen and heard digging around the doorjamb of the patrol car; spreading/rubbing/scraping/rustling/spitting sounds are also audible); RR. IV-41-50; RR. V-44-48; SX-8 (torn plastic baggies recovered from floorboard

46

of patrol car); <u>see</u> <u>also</u> RR. V-50 (Investigator Bennet testified that the baggies he recovered from the back of the patrol car were wet to touch and "[p]art of the baggies still had white crystal substance in them").

Appellant's third issue is without merit and should be held waived and/or overruled.

## CONCLUSION

Appellant's trial was without prejudicial error.

## PRAYER

The State prays that Appellant's conviction be affirmed.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

/s/ ANNE SWENSON_____
ANNE SWENSON, Assistant
Criminal District Attorney
State Bar No. 19575500
401 W. Belknap Street
Fort Worth, Texas 76196-0201
(817) 884-1687
FAX (817) 884-1672
coaappellatealerts@tarrantcounty.com

## CERTIFICATE OF COMPLIANCE

There are 9,605 words in the portions of the document covered by TEX. R.

APP. P. 9.4(i)(1).

/s/ ANNE SWENSON_____
ANNE SWENSON, Assistant
Criminal District Attorney

48

## CERTIFICATE OF SERVICE

A copy of the State's Brief has been electronically sent to appellate counsel for Appellant Jeremy David Lummus, Mr. Don Hass at DHnotices@ballhase.com, on this the 21st day of September 2015.

/s/ ANNE SWENSON_____
ANNE SWENSON, Assistant
Criminal District Attorney